## THE PEOPLE *v.* JOHN BUSH.

On the trial of an indictment for burglary, it appeared that the building in question was owned by G., that there were several apartments in the house, all of which were occupied by tenants, the outer or hall door being common to all the occupants, and of these apartments, the one alleged to have been broken and entered, was occupied by W.; held, that the apartment alleged to have been broken and entered, was properly laid in the indictment, as the dwelling house of W.

Also, *Held*, that in the absence of positive evidence on the point, whether the outer door and the door of the room in which the prisoner was found were latched, at the time of the entry of the prisoner, it was competent to prove that these doors were generally kept closed or shut, it having been shown that both the doors were latched ten or fifteen minutes previous to the alleged entry.

Opening a street door which is only latched, is a sufficient breaking to constitute burglary at the common law; but simply lifting the latch of an outer door, though still a sufficient breaking to constitute burglary in an inferior degree, is not a breaking within the statute definition of burglary in the first degree.

The court has a right to direct a jury to reconsider their verdict before it has been recorded, and it is its duty to do so, if satisfied there has been a palpable mistake.

CERTIORARI to the Court of Sessions of Kings county, where the defendant was convicted of burglary in the second degree.

The indictment in this case charged the defendant with burglary in the second degree, in breaking and entering the dwelling-house of one John Wood, on the 18th of May, 1857, by breaking an outer door, and stealing one pair of pantaloons of the value of six dollars.

The evidence showed that John Wood and his family occupied apartments at 258 Myrtle-avenue, consisting of the basement, first floor and part of the third floor; that the rest of the house was occupied by other families, and that the outer or hall door was common to them all; that

The People *v.* Bush.

on the eighteenth day of May, in the daytime, Anne Wood, the wife of the said John Wood, came up from the basement, and found the defendant in her room with a pair of her husband's pantaloons on his arm ; she asked him what he was doing with them, when, making no answer, he threw them down, and ran out of the front hall door ; the pantaloons were worth about $4.50; that the house belonged to Mr. Gascoyne, who did not reside in it.

The testimony on the part of the prosecution further showed, that on the day in question the hall door was not locked or fastened, and that the door leading from the hall into the room in which the defendant was found, was not locked or fastened either ; that neither of the doors were broken or forced open, and that the tenants in the house were constantly going in and out the hall door, and that no person knew when or how the defendant got into the room. It was further proved, that there was no person in the room in which the defendant was found, except himself.

The counsel for the prosecution was suffered to prove that the hall door was generally closed or shut, and that the door of the room in which the prisoner was found was generally kept shut; to which evidence the prisoner's counsel excepted. It also appeared that strangers frequently obtained admittance to the house without the previous knowledge of the inmates.

The counsel for the defendant requested the court to charge the jury, first, that there was no evidence of a breaking and entry sufficient to warrant a conviction for burglary; second, that there was no evidence of a burglary at all; third, that there must be an actual or constructive breaking into the house ; every entrance into a house by a trespasser is not a breaking, but that there must be evidence to show that the doors were fastened ; fourth, that the prisoner could only be convicted of petit larceny.

The court declined so to charge the jury, and refused to charge other than as follows : That an actual breaking was

necessary; that the smallest degree of force, such as lifting the latch, turning the handle, or pushing aside any obstacle which impeded the entrance of the party coupled with felonious intent, was sufficient; that it was for the jury to say, from the evidence, whether the prisoner was guilty or not; that if the jury had any reasonable doubt as to the guilt of the prisoner, he was entitled to the benefit of that doubt.

To which refusal the prisoner's counsel excepted.

The jury found the prisoner guilty of burglary in the third degree.

The court then directed the jury to retire, and directed the jury that under the testimony the prisoner could only be convicted of petit larceny, or burglary in the second degree, and that he could not be convicted of burglary in the third degree.

To all of which, the prisoner's counsel then and there excepted.

The jury, upon returning, said they found the prisoner guilty of burglary in the second degree.

The prisoner's counsel objected to the reception and entry of said verdict, but the court overruled the objection; to which the prisoner's counsel duly excepted.

*James Troy*, for the defendant.

I. The court erred in overruling the objection of the prisoner's counsel to the question, " Was the hall door generally closed or shut?" Such a question must have been based upon the assumption that if the door was generally shut, it was probably shut on the day in question, and if so shut, the prisoner probably opened it; a man cannot be convicted on a mere probability. ( *The People* v. *Bodine*, *Whart. Cr. L.*, 283; *Bemis' Webster case*, 462–464.)

II. The court erred in overruling the objection of the prisoner's counsel to the question, was the door of the room in which the prisoner was found, generally kept shut. The

question must have been based upon the same assumption as the other. (*Ib.*)

III. The court erred in refusing to charge the jury, that there was no evidence of a breaking sufficient to warrant a conviction for burglary. To warrant a conviction for burglary, it is necessary that there should be a breaking and entering into a dwelling-house with a felonious intent; the evidence showed that there was no breaking, and there being no evidence to show how the defendant came into the house, it was improperly left to the jury. (2 *R. S.*, 668, §§ 10, 11.)

IV. The court erred in refusing to charge the jury, that there was no evidence at all of a burglary. The prisoner was caught in the commission of a larceny; the act of stealing was evidence of the intent to steal, but the commission of larceny is no evidence of a burglary, and a breaking cannot be presumed where it is proven that there was none. (*Whart. Cr. L.*, 268; *Hiler* v. *The State*, 4 *Blackf.*, 552; 1 *Phil. on Ev.*, 47.)

V. The court erred in refusing to charge the jury, that there must be an actual or constructive breaking into the house; every entrance into a house by a trespasser is not a breaking; but that there must be evidence to show that the doors were fastened. (*The State* v. *Wilson, Cox*, 439; *Whart. Cr. L.*, 512; 3 *Greenl. on Ev.*, 70–72.)

VI. The court erred in refusing to charge the jury, that the prisoner could only be convicted of petit larceny. In the absence of any proof of a burglary, and the only evidence being that the prisoner was caught stealing a pair of pantaloons worth $4.50, the court was bound so to charge. (*Carpenter* v. *The People*, 4 *Scam.*, 197; *The People* v. *Jackson*, 3 *Hill*, 92; *Johnson* v. *The State*, 14 *Geo.*, 55.)

VII. The court erred in directing the jury to retire, after they rendered a verdict of burglary in the third degree. (*Whart. Cr. L.*, 923.)

·VIII. The court erred in instructing the jury that the prisoner could only be convicted of burglary in the second degree, or petit larceny, and that he could not be convicted of burglary in the third degree. If the defendant could have been convicted of burglary at all, it must have been burglary in the third degree, because it was proven that there was no person but himself in the room in which he was found; that room, for all the purposes of the indictment, was the dwelling-house of John Wood, and to convict the prisoner of burglary in the second degree, it should have been established that there was some human being therein when the prisoner entered, but the prisoner could not be convicted of burglary at all. (2 *R. S.*, 668, §§ 10, 11; 1 *Russ. on Cr.*, 800, 803; 3 *Greenl. on Ev.*, 70.)

IX. The court erred in receiving and entering the verdict of burglary in the second degree. The jury had previously rendered a verdict of burglary in the third degree, and they could not render two verdicts, or convict the prisoner twice. It was also known to the court that one of the jurors was a German, and did not understand the verdict or proceedings, or what had transpired on the trial; and that the verdict of burglary in the second degree was, in point of fact, only the verdict of eleven jurors instead of twelve. (*Barb. C. L.*, 369.)

*J. G. Schumaker* (District Attorney), for the people.

*By the Court*, S. B. STRONG, P. J.—The defendant was convicted of the crime of burglary in the second degree, at a Court of Sessions in the county of Kings. Several objections were raised, by his counsel, to the proceedings during the trial, and have been repeated in this court, the more material of which I shall consider.

The indictment charges that the crime was committed in the dwelling-house of John Wood. He occupied two apartments in the house, and there were several tenanted by

The People *v.* Bush.

others. The outer or hall door was common to all the occupants. The rooms occupied by Wood constituted his dwelling-house within the requirements of the law. It has been decided that chambers in a college or inn of court, where each individual has a distinct property, are considered as separate mansions, though under the same roof and having a common entrance. (1 *Hale*, 556.)

Neither the hall door nor the door of the room in which the defendant had been discovered, was locked. If these doors were shut, he had simply unlatched them when he made his entrance. There was no one in the apartment when he entered it. The wife of the tenant testified that she had left the door latched when she left the room, about fifteen minutes before she returned and discovered the defendant, and that the hall door was also latched when she saw it, about ten minutes before; and she farther testified (after an objection had been taken and overruled) that both doors were generally kept closed. I am satisfied that this evidence was properly admitted. The proof that the doors had been so recently shut fairly led to the inference that they were closed at the time, which was strengthened by the general custom. Had no other proof but that of the general habit been introduced, I doubt whether that alone should have been received, and, if admissible, it would have been too uncertain to have warranted the conclusion that the doors were closed when the defendant reached them.

It is well settled that unlatching a door which is only latched is a sufficient breaking to constitute burglary at the common law. (1 *Hale*, 552; 2 *East's P. C.*, 487; 3 *Chit. Cr. L.*, 1093.) The rule has been recognized by the Supreme Court of this state. (*Curtis* v. *Hubbard*, 1 *Hill*, 238, per *Cowen, J.*)

The court had a right to direct the jury to reconsider their verdict before it had been recorded, and it was its duty to do so, if satisfied that there had been a palpable mistake. (1 *And.*, 104; *Alleyn*, 12; *Plowd.*, 211, *b.*; 2 *Hale*, 299, 300,

310; *Hawk.*, *b.* 2, *c.* 47, § 11; *Bro. Abr.*, 7, "*Jurors;*" *Bac. Abr.*, "*Verdict,*" *G.*)

I think, however, that the court erred in instructing the jury that this was a case of burglary in the second degree, or of petit larceny. Probably it was supposed to be included in that section of the statute which provides that " Every person who shall be convicted of breaking into any dwelling-house in the day-time, under such circumstances as would have constituted burglary in the first degree if committed in the night-time, shall be deemed guilty of burglary in the second degree." (2 *R. S.*, 668, § 11.) To constitute burglary in the first degree there must be forcibly bursting or breaking the wall or an outer door, window or shutter of a window, or the lock or bolt of such door, or the fastenings of such window or shutter, or breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, or by unlocking an outer door by means of false keys or by picking the lock thereof. (*Id.*, 668, § 10.) In this case there was neither. The forcibly bursting or breaking an outer door means, in common parlance, more than simply lifting a latch. That the first subdivision of the tenth section must have designed something further is apparent from the third subdivision, which provides that unlocking an outer door by means of false keys, or picking the lock thereof, shall be a sufficient breaking to constitute burglary in the first degree. The provision would have been wholly unnecessary if simply unlatching the door would have been deemed bursting or breaking it within the meaning of a former part of the same section. Clearly there is no other statutory definition of burglary in the second degree which comprehends the crime perpetrated by the defendant, as proved on his trial.

For the error of the court in charging the jury that this was a case of burglary in the second degree, or petit larceny,

and which led to an improper conviction, such conviction must be set aside, and there must be a new trial in the Court of General Sessions.

