Ida M. Paul, as Administratrix, etc., Respondent, *v.* The Travelers' Insurance Company, Appellant.

By the provisions of an accident policy of insurance the insured was indemnified in a certain sum per week if disabled from prosecuting business " by reason of bodily injuries * * * through external, violent and accidental means;" in case of death, resulting from the accident, the insurer to pay a specified sum. It was then provided that this insurance should not extend " to any bodily injury, of which there shall be no external and visible sign upon the body, * * * nor to any death or disability which may have been caused * * * by the taking of poison, contact with poisonous substances, or inhaling of gas or by any surgical operation or medical treatment." In an action upon the policy, it appeared that the insured was found dead in bed in his room at a hotel. The gas had in some way been turned on, the atmos- phere of the room filled with it, and the death was caused by breathing this atmosphere. The court found, as a fact, that the death was caused "by accidental means." There was no external or visible sign of injury upon the body. *Held,* that the provision requiring such a sign did not apply in case of death, but only to injuries entitling the insured to a weekly indemnity during their continuance; also, that the death was not caused by " the inhaling of gas " within the meaning of the policy; that those words applied only to a voluntary and intelligent action on the part of the insured; also, that the death was caused by external and violent means within the meaning of the policy.

*Hill* v. *H. A. I. Co.* (22 Hun, 187) overruled.

(Argued January 22, 1889; decided March 5, 1889.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department, made July 1, 1887, which reversed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

This action was upon an accident policy of insurance.

The material facts are stated in the opinion.

*Louis Marshall* for appellant. The death of the deceased was caused by the inhaling of gas within the meaning of the policy. (36 Alb. Law Jour. 263 ; *Jackson* v. *Lewis,* 17 Johns. 475 ; *People* v. *N. Y. C. R. R. Co.,* 13 N. Y. 78 ; *Benton* v. *Wickwire,* 54 id. 226 ; *Dwight* v. *G. L. Ins. Co.,* 103 id. 347.) Parties to an insurance contract have the right to insert such

lawful stipulations and conditions therein as they may mutually agree upon, or which they may consider necessary and proper to protect their interest, and which, when made, must be construed and enforced like all other contracts, according to the express understanding and intent of the parties making them. (*Appleby* v. *A. F. Ins. Co.*, 54 N. Y. 253; *Foote* v. *A Ins. Co.*, 61 id. 571; *Graham* v. *F. Ins. Co.*, 87 id. 69; *Armour* v. *T. F. Ins. Co.*, 90 id. 450; May on Ins. § 172; *Mack* v. *R. G. Ins. Co.*, 106 N. Y. 535.)   The same principle applicable to the interpretation of statutes is applied to contracts of insurance, and such conditions are liberally construed. (*Sherwood* v. *A. Ins. Co.*, 73 N. Y. 447; *Herman* v. *A. F. Ins. Co.*, 85 id. 162; *Matson* v. *F. B. Ins. Co.*, 73 id. 310; *Appleby* v. *A. F. Ins. Co.*, 54 id. 253; *Graham* v. *F. Ins. Co.*, 87 id. 69; *Short* v. *H. Ins. Co.*, 90 id. 16; *Mack* v. *R. G. Ins. Co.*, 106 id. 560; *Douglass* v. *K. L. Ins. Co.*, 83 id. 492; *De Gogorza* v. *K. L. Ins. Co.*, 65 id. 232; *Murray* v. *N. Y. L. Ins. Co.*, 96 id. 614; *Mallory* v. *T. Ins. Co.*, 47 id. 52; *Dwight* v. *G. L. Ins. Co.*, 103 id. 347; *Shader* v. *R. P. A. Co.*, 66 id. 441; *Hine* v. *Woolworth*, 93 id. 75; *Hill* v. *H. A. Ins. Co.*, 22 Hun, 187; *Pollock* v. *U. S. M. A. A.*, 102 Penn. St. 230; *Bayliss* v. *T. Ins. Co.*, 14 Blatch. 143; *T. Ins. Co.* v. *McConkey*, 127 U. S. 661.)   The General Term erred in applying to this clause the rule that where the language of a policy is capable of two constructions, that most favorable to the insured should be adopted.   (*Holly* v. *M. L. Ins. Co.*, 105 N. Y. 438, 439; *Foot* v. *A. L. Ins. Co.*, 61 id. 571; *Hoffman* v. *A. L. Ins. Co.*, 32 id. 405; *Colt* v. *P. F. Ins. Co.*, 54 id. 595.)   The language and terms of a contract will be understood in their ordinary and popular sense, and not in a technical, unusual or restricted sense; and, accordingly, the words " inhaling of gas " refer to the breathing of illuminating gas, and not to the " taking of laughing gas."   (5 Science for All, 294–298; Imperial Dictionary [London, 1882]; *Curran* v. *W. C. & M. Co.*, 36 N. Y. 186; *Campbell* v. *Seaman*, 63 id. 570; *Hutchins* v. *Smith*, 63 Barb. 254, 258; *P. L. Co.'s*

*Appeal,* 96 Penn. St. 116; English Factory and Workshop Act of 1878, 41, 42 Vict., chap. 16; *Holly* v. *B. G. L. Co.,* 8 Gray, 123; *Emerson* v. *L. G. L. Co.,* 3 Allen, 410; *S. C.,* 6 id. 146; *Hunt* v. *L. G. L. Co.,* 8 id. 170, 171; *Smith* v. *B. G. B. L. Co.,* 129 Mass. 318; Wood on Fire Ins. [2d. ed.] 144; Bishop on Cont. § 404; 2 Parsons on Cont. [5th ed.] 501; *S. N. Co.* v. *Moore,* 2 Whart. 491; *Herman* v. *M. Ins. Co.,* 81 N. Y. 184; *Stanley* v. *W. Ins. Co.,* L. R., 3 Exch. 71; 2 W. & S. on M. Juris. §§ 346, 543; Wood's T. M. M. and T. [2d. ed.] 268; Ziemssen's Cyclopedia, 450; *Colt* v. *P. F. Ins. Co.,* 54 N. Y. 598; *Bayliss* v. *T. Ins. Co.,* 14 Blatch. 143.) It has been held that a construction which renders words needless is not to be given to them. (2 Parsons on Cont. [5th ed.] 504, 505; 1 Addison on Cont. § 181; *Ward* v. *Whitney,* 8 N. Y. 446; *Westcott* v. *Thompson,* 18 id. 386; *Rosenplaenter* v. *Roessle,* 54 id. 262; *Shader* v. *R. P. Co.,* 66 id. 443.) The death of plaintiff's intestate was not occasioned by bodily injuries received through external and violent means within the meaning of the policy. (*Southard* v. *R. P. Ins. Co.,* 34 Conn. 574; *Hill* v. *H. A. Ins. Co.,* 22 Hun, 187; *Pollock* v. *U. S. M. A. A.,* 102 Penn. St. 330; *Bayliss* v. *T. Ins. Co.,* 14 Blatch. 143; *Sinclair* v. *M. P. Ins. Co.,* 3 El. & El. 478.) The death of the plaintiff's intestate was not occasioned by any bodily injury of which there was any external and visible sign upon the body of the insured, and the plaintiff cannot, therefore, recover. (*Barry* v. *U. S. M. A. A.,* 14 Ins. Law Jour. 604, 605; *N. B. A.* v. *Gramman,* 15 id. 696.)

*William S. Andrews* for respondent. The death of plaintiff's intestate was caused by external, violent and accidental means. (*Trew* v. *R. P. A. Co.,* 7 Jur. [N. S.] 878; *Reynolds* v. *A. Ins. Co.,* 22 L. T. Rep. [N. S.] 820; *Winspear* v. *A. Ins. Co.,* 6 Q. B. Div. 42; *Martin* v. *T. N. Ins. Co.,* 1 F. & F. 505; *Reynolds* v. *Ins. Co.,* 1 N. Y. Suppl. 738; *McGlinchy* v. *Ins. Co.,* 14 Atl. Rep. 13; 38 Alb. Law. Jour. 259; *Hill* v. *H. A. Ins. Co.,* 22 Hun, 187; *Bacon* v. *U. S. M. A. A.,* 44 id. 599; *Mallory* v. *T. Ins. Co.,* 47 N. Y. 52; *Ins. Co.* v.

*McConkey*, 8 Sup. Ct. Rep. 1360.)   The provision that the insurance shall not cover any bodily injury of which there shall be no external and visible signs upon the body of the insured, applies only to cases of non-fatal injury.   (*Mallory* v. *T. Ins. Co.*, 47 N. Y. 52, 76.)   Death, such as is shown in this case, is not death by "inhaling gas" within the meaning of this policy.   (*Hoffman* v. *E. F. Ins. Co.*, 32 N. Y. 405 ; *Colt* v. *P. F. Ins. Co.*, 54 id., 595 ; *Dilleber* v. *H. Ins. Co.*, 69 id. 256 ; *Trew* v. *P. A. Co.*, 7 Jur. [N. S.] 878 ; *Wakefield* v. *Fargo*, 90 N. Y. 218.)

GRAY, J.  This record contains no other evidence or proofs than are embodied in a paper, entitled " statement of facts and stipulation of attorneys," which was submitted by the counsel to the trial judge.   Upon this stipulation the trial judge found, among others, the following as facts :  " That on December 3, 1884, and  during  the  continuance of  the said  certificate or policy of insurance, the said Matthew L. Paul died ; that at the time of his death he was stopping as a guest at the Sturtevant House in New York city ; that he went to his room  in said hotel between ten and eleven o'clock P. M. of December 2, 1884 ; that at some time, after he went to his room, the gas therein became turned on ; that at about two o'clock of December 3, 1884, the said Paul was found dead in his bed ; that the room was tightly closed and the atmosphere therein was filled with illuminating gas ; that the said Paul lay on his bed like a man asleep, without any outward indications that he was dead and without any external or visible signs of injury upon his body ; that the death of said Paul was caused by his breathing the atmosphere of said room, full, as aforesaid, of illuminating gas." And the judge also found as a fact, " that the death of said Paul was occasioned by accidental means."   The defendant resists a recovery upon the policy of insurance, on the ground that the deceased came to his death by the inhaling of gas, within the meaning of the policy, and from such a cause of death no right of action arises.

The sole question presented, therefore, is as to the proper

interpretation of the policy of insurance issued to the plaintiff's intestate. By its provisions the person insured is indemnified in a certain sum per week, "against loss of time not exceeding twenty-six consecutive weeks from the happening of such accident and injury as shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business by reason of bodily injuries * * *. through external, violent and accidental means; or in the event of death, occasioned by bodily injuries received as aforesaid, when resulting within ninety days from the happening thereof, and in such event only, will pay the sum of $3,000. * * * Provided, always, that this insurance shall not extend to any bodily injury of which there shall be no external and visible sign upon the body of the insured, * * * nor to any death or disability which may have been caused * *, * by hernia, bodily infirmities, * * * nor by the taking of poison, contact with poisonous substances, or inhaling of gas, or by any surgical operation or medical treatment; nor to any case except where the injury is the proximate and sole cause of the disability or death. * * *." With great ingenuity and ability the counsel for the litigants have argued in support of their respective positions; the one that Paul's death was the result of an accidental cause, which was covered by the fair and reasonable interpretation of this policy; and the other, that, by language clear and unambiguous, which leaves no office for interpretation to perform, such a death was expressly excepted in the instrument of insurance.

A careful consideration of this instrument and of the scope and design of its provisions, leads us to the conclusion that the appellant must fail in its contention. At the foundation lie the facts, conceded and found, that there was a death caused by accidental means, and that the accidental means were the decedent's "breathing the atmosphere of the room full of illuminating gas." The absence of any external and visible sign upon the body of the insured presents no embarrassment. We do not understand the conditions of this agreement to require

such a sign as a prerequisite to the right of recovery in case of death. We consider that point of construction to have been covered by the decision of this court in *Mallory* v. *Traders' Insurance Company* (47 N. Y. 52). In that case the body of the deceased was found in a pond. The policy was one embracing causes only, where the death was caused by an injury received from an accident, and contained this clause " Provided always that no claim shall be made under this policy by the insured in respect of any injury, unless the same shall be caused by some outward and visible means. * * *" GROVER, J., delivering the opinion of the court, held : " The construction put upon the contract in the charge was correct. That construction was that the terms outward and visible means applied only to injuries not causing death in three months, but to such only as entitled the deceased to certain sums from the company during their continuance, as provided by the policy."

In the present policy the proviso that the insurance shall not extend to any bodily injury, of which there shall be no external and visible sign upon the body of the insured, clearly has reference to a claim made under it for the weekly indemnity. Such a provision, obviously, was designed as a proper precaution to guard the company against a liability upon a fraudulent claim by the insured for indemnity for bodily injuries, of which the only evidence might be the word of the person. This policy, like any other contract between parties, is to be construed, not merely by the letter, but by the spirit. We must read it in connection with the whole subject-matter to which it relates, and give to language its ordinary and natural meaning. If, then, the intention of the parties becomes manifest, such intention must prevail. Now what was the case here of these parties? The deceased desired to secure a pecuniary indemnity against accidents, which would disable him from the prosecution of his business, or which would result in his death ; and, in consideration of what he pays, the company agrees to so indemnify him, but limits its liability to cases of pure accident, happening through external and violent agencies,

and not made possible by the exposure of the individual to the action of the elements of weather; to wars or popular tumults; to the dangers of certain occupations mentioned; to the results of engaging in certain sports or adventures, or of his misconduct or unlawful act. It excludes injuries and death resulting from intentional or suicidal acts, or from voluntary and conscious and unnecessary exposure to perils and risks. It excludes injuries resulting from constitutional infirmities and disease in any form, and death or disabilities which result from medical or surgical treatment; from the taking of poison and from the contact with poisonous substances. But, in expressing its intention not to be liable for death from " inhaling of gas," the company can only be understood to mean a voluntary and intelligent act by the insured, and not an involuntary and unconscious act. Read in that sense and in the light of the context, these words must be interpreted as having reference to medical or surgical treatment, 'in which, *ex vi termini*, would be included the dentist's work, or to a suicidal purpose. Of course the deceased ·must have, in a certain sense, inhaled gas; but, in view of the finding that the death was caused by accidental means, the proper meaning of words compels, as does the logic of the thing, the conclusion that there was not that voluntary or conscious act, necessarily involved in ·the process of inhaling. An accident is the happening of an event without the aid and the design of the person and which is unforeseen. The finding itself defines the cause of death as the breathing of the atmosphere of the room full of illuminating gas. To inhale gas requires an act of volition on the person's part before the danger is incurred.. Poison may be taken by mistake, or poisonous substances may be inadvertently touched; but, whatever the motive of the insured, his act precedes either fact.

I agree with the counsel of the respondent in his suggestion, that if the exception is to cover all cases where death is caused by the presence of gas, there would be no reason for using the word " inhale." If the policy had said that it was not to extend to any death caused wholly or in part by gas, it

would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake.   Policies of insurance are to be liberally construed, and, as in all contracts, conditions are to be construed strictly against those for whose benefit they are reserved.   (*Catlin* v. *Springfield Ins. Co.*, 1 Sumner, 440.) In their construction, their words should be taken in that sense, to which the apparent object and intention of the parties limit them, and which is to be gathered from the surrounding clauses and from all the parts of the instrument.   (*Yeaton* v. *Fry*, 5 Cranch, 335 ; *White* v. *Hudson River Ins. Co.*, 15 How. Pr. 288 ; *Hoffman* v. *Ætna, etc., Co.*, 32 N. Y. 405.) It is an accepted canon of interpretation that if there is any uncertainty as to whether given words were used in an enlarged or restricted sense, that construction should be adopted, which is most beneficial to the covenantee.   (*Doer* v. *Dixon*, 9 East, 15 ; *Marvin* v. *Stone*, 2 Cowen, 806.)   To hold that the death of plaintiff's intestate was caused by the inhaling of gas, within the meaning of this policy, would be to construe its terms contrary to the usual import of language and, in fact, to hold, against the finding, that the death was not accidental.

As to the point raised by the appellant that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere, as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death.   That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause. The cases collated on the respondent's brief sufficiently establish that as a proposition.   (*Trew* v. *Railway, etc., Co.*, 7 Jurist [N. S.] 878; *Reynolds* v. *Accident, etc., Co.*, 22 Law Jour. Rep. [N. S.] 820; *McGlinchey* v. *F., and C. Co.*, 80 Maine, 251.)   The case of *Hill* v. *Hartford, etc., Company* (22 Hun, 187) cited by appellant, was that of a physician's death from drinking by mistake water from a goblet in which was some poison.   It was held, by a divided

court, that the injury was not effected through external and violent means within the meaning of similar provisions of a policy. We cannot approve of the reasoning of the court, and agree with the General Term opinion in this case, that the rule there laid down was too strict.

In *McGlinchey* v. *Fidelity and Casualty Company* (80 Me. 251), the Supreme Court of Maine held similar views of construction of an accident policy, and rest, among other authorities, upon the General Term opinion in this case.

The order of the General Term should be affirmed, and judgment absolute should be ordered in favor of the plaintiff under the defendant's stipulation.

All concur except RUGER, Ch. J., and ANDREWS, J., not voting.

Judgment accordingly.