# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—OCTOBER TERM, 1889.

## EMMA T. HEALY

v.

## THE MUTUAL ACCIDENT ASSOCIATION OF THE NORTHWEST.

*Accident Insurance—Policy—Conditions—Poison—Inadvertent Taking of.*

A death occasioned by the accidental drinking of poison or an excessive quantity of a dangerous drug, is not within a condition in a policy setting forth that the same would become payable if assured, "shall have sustained bodily injuries received by, or through, external, violent, and accidental means" "and such injuries alone shall have occasioned death."

[Opinion filed December 2, 1889.]

IN ERROR to the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding.

(17)

Messrs. Miller, Leman & Chase, for plaintiff in error.

Messrs. Albert H. Veeder and Mason B. Loomis, for defendant in error.

While it is a rule applicable to insurance and other contracts, that they are to be construed most strongly against the party making the promise, yet this rule does not go so far as to authorize a construction against the insurer, or promisor, merely because that view is possible. On the contrary, in the absence of anything to show that the terms of such contract are intended to be understood in a particular or special sense, courts will go no further than to hold the insurer or the promisor liable to the extent which the other party had a right to understand from the terms of the instrument, when viewed in their ordinary and commonly received acceptation. Bliss on Life Insurance, Sec. 542.

In the construction of policies of insurance their words should be taken in that sense to which the apparent object and intention of the parties limit them, and which is to be gathered from the surrounding clauses and from all parts of the instrument. Paul v. Travelers Ins. Co., 112 N. Y. 479; Yeaton v. Fry, 5 Cranch, 335.

The point is made by the learned counsel for plaintiff, that the "taking of poison" within the meaning of the proviso in this policy does not refer to or include the accidental injuries alleged in the declaration, or an accidental death from "taking or swallowing a drug or poison causing death," etc. And it is argued that the "taking of poison," as here used, does not mean that which happens by accident, but only that which involves some intentional act, or, in other words, suicide. That this is not the meaning, is evident from the fact that after using this language, the policy goes on to recite that "no claim shall be made under this certificate when the death * * * may have been caused * * * by suicide * * * or self-inflicted injuries." Thereby expressly providing for all cases of death by intentional means. And the case cited by counsel in support of their position, Lawrence v. Mut. L. Ins. Co., 5 Ill. App. 280, goes no further than to hold

that the taking of repeated doses of laudanum by the insured, to alleviate pain, from the effect of which he died, can not be termed an act of "self-destruction" within the meaning of a policy which provided that "the self-destruction of the person, whether voluntary or involuntary, and whether he be sane or insane, is not a risk assumed by the company."

The counsel seem, also, to be mistaken as to the construction placed upon the clause "inhaling gas," by the court, in Paul v. Travelers Ins. Co., 112 N. Y. 472. There the court does not say or intimate that, if Paul had inhaled the gas knowingly and voluntarily, but without the intention of killing himself, that it would not have been within the prohibition of the policy. On the contrary, the court, in illustrating the difference between the unconscious act of breathing in gas, and the "inhaling" of it, within the meaning of the policy, says: "Poison may be taken by mistake, or poisonous substances may be inadvertently touched, but whatever the motive of the insured, his act precedes either fact."

This and the preceding language used by the court, is not that the gas was inhaled accidentally, but that it was not "inhaled," at all, within the meaning of the policy. And it may be safely asserted that if ever a case comes before the learned Court of Appeals of the State of New York under a similar policy, where it clearly appears that the insured came to his death by means of knowingly and consciously "inhaling gas," whatever the motive of the insured, the court will not ignore this proviso in the policy, or hold the company liable.

As stated hereinbefore, the principal object of the restrictive clauses and provisos referred to in these policies of accident insurance, was to prevent imposition upon the companies and associations by unscrupulous, designing persons, and to that end these particular clauses were inserted, so that, in every case, in so far as possible, there should be outward, tangible evidence of the cause of death; and for this reason deaths "in consequence of disease," or "by the taking of poison" and not the result of injuries received by or through "external, violent and accidental means," were excluded from the benefits of the policy. And even though it should be held that

the words " taking of poison " in the policy, related only to
an intentional taking, yet the insuperable barrier to a recov-
ery on the part of plaintiff still remains—that the death of
Healy resulted from internal causes, and not from "bodily
injuries received by or through external, violent· and acci-
dental means, within the intent and meaning of the certificate
of organization of said association," or within the intent and
meaning of the certificate of membership sued upon.   As
was well said by the learned chief justice who delivered the
opinion in Pollock v. U. S. Mut. Acc. Ass'n, 102 Pa. St. 230,
" To hold the association liable for a death caused by taking
poison would not only be in conflict with the letter of the
agreement, but contrary to the whole purpose for which the
association appears to have been formed."

GARY, P. J.   The single question in this case is whether,
under a policy of life insurance becoming payable if the
assured " shall have sustained bodily injuries received by or
through external, violent and accidental means," " and such
injuries alone shall have occasioned death," a loss has
occurred when the death was caused " by accidentally taking
and drinking poison," or " by accidentally taking poison " or
because the assured " accidentally swallowed an overdose or
excessive quantity of a certain drug, to wit, chloral."   By the
different counts of the declaration these causes of death are
alleged.    The Circuit Court sustained a demurrer on the
ground that death from such a cause was not within the policy.
The only authority for the plaintiff below and here, is the
disapproval, first by the Supreme Court, and afterward by the
Court of Appeals of New York in Paul v. Travelers Insur-
ance Co., 45 Hun, 313 (112 N. Y. 472), of the case of Hill v.
Hartford  Co., 22 Hun, 187, holding that where the assured,
by inadvertence, drank poison which he had himself mixed
with water and left in a glass, and then drank the contents sup⁔
posing it to be clear water, from which he died, this was not
a death caused by injury through external, violent, accidental
means.    In accord with this last case are the cases of Pollock
v. U. S. Mut. Acc., 102 Penn. St. 230, where birch oil was

drunk under the supposition that it was something else, and, Bayless v. Travelers Ins. Co., 14 Blatch. 143, where a dose of opium, larger than prescribed, was taken by mistake. There is no case cited to the contrary of these. Cases of drowning, and of suffocation by gas, have been held to be losses within such policies. Trew v. Ins. Co., 5 Hurlst. & N. 211, 6 Hurlst. & N. 839, and Paul v. Travelers Ass. Co., 112 N. Y. 472, are examples. A reference to the cases is all that is here necessary.

There is no authority for the unnatural and forced construction that the plaintiff seeks to have put upon the words, and the judgment is affirmed.

*Judgment affirmed.*