ROSENTHAL et al. v. AMERICAN BONDING CO. OF BALTIMORE.

(Supreme Court, Appellate Division, First Department. March 24, 1911.)

1. BURGLARY (§ 9*)—ACTS CONSTITUTING—STATUTES—"BREAK."

Under Pen. Code, §§ 498, 499, making one who with intent to commit a crime therein breaks and enters a building guilty of burglary, and defining the word "break" as opening for the purpose of entering by any means whatever any door of a building, or to any apartment therein, persons who opened an unlocked door to a store, and who assaulted the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clerks in the store and threatened them with violence and tied them, and who carried away merchandise, are guilty of burglary.

[Ed. Note.—For other cases, see Burglary, Cent. Dig. §§ 6–12; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 1, pp. 862–866; vol. 8, pp. 7592, 7593; vol. 1, pp. 908–911; vol. 8, p. 7593.]

2. INSURANCE (§ 425*)—BURGLARY INSURANCE—CONSTRUCTION OF POLICY.

A policy insuring against loss by burglary of any merchandise in premises situated in the state of New York insures against burglary as defined by the statutes of New York, and the policy is not limited to common-law burglary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1129, 1135, 1143; Dec. Dig. § 425.*]

3. INSURANCE (§ 425*)—"BURGLARY" INSURANCE—CONTRACTS—CONSTRUCTION.

The stipulation in a policy insuring against direct loss by burglary of merchandise that insurer shall not be liable, unless there are visible marks on the premises of the actual force and violence used in making entry into the premises, or exit therefrom, is not a limitation of liability, but is a mere evidentiary provision to prevent fraudulent claims, to provide for cases, where, in the absence of witnesses, a burglary is sought to be established by the mere loss of goods, with no evidence, direct or circumstantial, of a breaking and entering and cases of pilfering by employés and the like, and a burglary committed in the presence of clerks of insured is within the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1129, 1135, 1139; Dec. Dig. § 425.*]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Solomon M. Rosenthal and others against the American Bonding Company of Baltimore. From a judgment for plaintiffs entered on a directed verdict, and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 124 N. Y. Supp. 905.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Wilder, Ewen & Patterson (John Ewen, of counsel), for appellant. Ernest Hall, for respondents.

CLARKE, J. This is an action on a burglary insurance policy. At the close of plaintiffs' case, both sides moved for the direction of a verdict. The court directed a verdict for the plaintiffs, and from the judgment entered thereon and from the order denying a motion for a new trial the defendant appeals. The plaintiffs are merchants dealing in silks at wholesale. Their place of business was in the first loft of the premises 463 Broome street. The defendant issued to plaintiffs a policy whereby it insured them:

"For direct loss by burglary of any of the merchandise described in the schedule hereinafter contained and stated to be insured hereunder occasioned by its felonious abstraction from the store, warehouse, office, loft or rooms, hereinafter called the premises and actually occupied by the Assured in the manner set forth in the Schedule, by any person or persons who have made forcible and violent entrance upon the premises, or exit therefrom, of which force and violence there shall be visible evidence. * * * Special agree-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ments.  A. The company shall not be liable:  (1) Unless there are visible marks upon the premises of the actual force and violence used in making entry into the said premises or exit therefrom.  *  *  * ”

The proof established that at about half past 7 o'clock on Monday morning, June 17, 1907, two of plaintiffs' employés entered the store or loft which was up one flight of stairs to prepare for business.  They opened the door with a key, and shut the door after entering, but did not lock it.  The stock clerk testified:

"I walked over to the electric box and gave the Holmes people the signal everything was all right, and they gave me two bells back.  I walked back to open the shutters.  I no sooner got to the rear of the store when the door was flung open.  I saw a man come in with a gun in each hand.  He ordered me to throw up my hands.  I refused to do it, and he started to beat me.  He was punching me right along.  *  *  *  He took the butt of his gun and struck me in the back of the head with it.  I fell over the counter, and, as I fell over, he told the young fellow that was with him to bind my hands.  *  *  *  That door was closed on that morning when I was in the store.  *  *  *  Q. When these people came in did they throw open the door?  A. Yes, sir."

The clerks were tied up hand and foot by straps, taken into the back office, a bandanna tied over their faces, and the two men, a discharged employé and his brother, carried away about $1,000 worth of goods.  There was a subsequent arrest and indictment.  It is not disputed that there was a "felonious abstraction" of goods of the plaintiffs from their store, accompanied with violence, threats, and the display of deadly weapons.

There is no doubt that the transaction constituted burglary in the third degree under section 498 of the Penal Code, in force at the time of the acts complained of:

"A person who either (1), with intent to commit a crime therein, breaks and enters a building, or a room, or any part of a building; or (2) being in a building, commits a crime therein and breaks out of the same; is guilty of burglary in the third degree."

Section 499 defines "break" as follows:

" *  *  *  Opening, for the purpose of entering therein, by any means whatever, any outer door of a building, or of any apartment or set of apartments therein separately used or occupied, or any window, shutter, scuttle or other thing used for covering or closing an opening thereto, or therein, or which gives passage from one part thereof to another."

The turning of the handle and the opening of the closed door was a breaking.  "If, therefore, the prisoner in entering the cellar unlatched the door immediately communicating with it, there was a breaking and entry which would constitute burglary, provided the other constituents of the offense were made out, namely, that the prisoner entered with the intent to commit a crime."  McCourt v. People, 64 N. Y. 583.  See, also, People v. Bush, 3 Parker, Cr. R. 552; Tickner v. People, 6 Hun, 657.

In People v. Gartland, 30 App. Div. 534, 52 N. Y. Supp. 352, it was said:

"There can be no doubt that the prisoner, with two companions, went into the apartment through that entrance door.  *  *  *  But he claims that there was not sufficient proof to show that there was any breaking or force,

used in any way, to gain an entrance, so as to bring his acts within the statutory definition of burglary.  *  *  *  That definition (section 499, Pen. Code) is satisfied if the proof shows that the appellant opened, by any means, the outer door of the apartment named in the indictment. That he gained entrance through that door is, as said before, admitted. If that door were shut at the time he made his entrance to the apartment, and he opened it by any means whatever, he was guilty of the offense."

So that the proof clearly established that there was a direct loss by burglary of merchandise occasioned by its felonious abstraction from the store, warehouse, office, loft, or rooms by persons who made a forcible and violent entrance upon the premises, and of which force and violence there was visible evidence in the testimony of the witnesses who saw the criminals forcibly throw the door open and advance upon them pistol in hand. The provisions of the first paragraph of the policy cited, supra, are therefore fully met by the proof. The question is whether a felonious asportation of goods completely proved under such circumstances was covered by the policy, because of the further clause thereof:

"The company shall not be liable unless there are visible marks upon the premises of the actual force and violence used in making entry into the said premises or making exit therefrom."

It is suggested that the language of the policy is to be read as referring not to statutory, but common-law, burglary. But the policy was written upon premises situate in the state of New York. If a loss occurred and it became necessary to bring suit thereon, the courts of this state were undoubtedly to pass thereon. The "burglary" insured against was clearly "burglary" as defined by the statutes of this state. Common-law burglary could not have been intended for the building was not a dwelling house. Said Sir William Blackstone in his Commentaries (volume 4, p. 224):

"The definition of a burglar, as given us by Sir Edward Coke (3 Inst. 63), is: 'He that by night breaketh and entereth into a mansion house, with intent to commit a felony.'"

But, so far as the "breaking and entering" is concerned, the facts bring this case within the common law, for the same learned commentator says at page 226:

"There must in general be an actual breaking; not a mere clausum fregit (by leaping over invisible ideal boundaries which may constitute a civil trespass), but a substantial and forcible irruption. As at least by breaking or taking out the glass of, or otherwise opening a window; picking a lock or opening it with a key; nay, by lifting up the latch of a door, or unloosing any other fastening which the owner has provided."

"There is a sufficient breaking at common law, and a 'forcible breaking' within the meaning of a statute, when a person enters a house by unlocking or unlatching a door, or even by pushing open a door which is shut, but neither locked nor latched,  *  *  *  and in many other cases where a very slight degree of force is used."  6 Cyc. 175.

In a statute punishing any one who shall "forcibly break and enter" a dwelling house, the word "forcibly" only expresses the degree of force that was implied at common law from the word "break," and a breaking sufficient at common law is sufficient under the statute. Timmons v. State, 34 Ohio St. 426, 32 Am. Rep. 376.

The risk insured against having been fully and clearly set forth in the paragraph commencing, "for direct loss by burglary," we interpret the clause, "unless there are visible marks upon the premises of the actual force and violence used in making entry into the said premises or exit therefrom," not as a limitation of liability—not as description of the risk—but as mere evidentiary provisions inserted to prevent fraudulent claims, to provide for cases where in the absence of witnesses a burglary is sought to be established by the mere loss of goods with no evidence direct or circumstantial of a breaking and entering, cases of pilfering by employés, and the like.

Cases under policies insuring against death caused by accident are analogous and instructive. In Root v. London Guaranty Co., 92 App. Div. 578, 86 N. Y. Supp. 1055, by the provisions of the policy, the defendant insured decedent in the sum of $5,000 "against bodily injuries sustained wholly and exclusively through external violence occasioned accidentally by visible means." It further provided:

"That this insurance does not cover injuries of which there is no visible mark on the body (the body itself in case of death not being deemed such mark)."

Decedent had fallen from a bicycle on the 20th of June, 1902, fracturing his right femur. He died on the 10th of August of angina pectoris. The fractured femur recovered. The physicians testified that the heart spasms were not attributable to a broken femur. There was no visible mark on the back or chest, and the appellant contended that the anginal pains, even though resulting from the accident, did not bring the case within the compass of the policy. The court said:

"We think this is too narrow a construction to put upon its language. Where it is plain that an accident has occurred and severe injuries have resulted, and it is a fair deduction from the circumstances that death ensued as the direct consequence of such accident, the policy should be construed to hold the defendant liable, even though no contusions or marks appear upon the body. A man may be killed by a blow over the heart, or by drowning or by falling from a balloon, and death ensue before reaching the ground, and in each instance there may be no mark upon the body, yet the death is by accidental means, and should be within the purview of the policy."

In Paul v. Travelers' Insurance Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758, the policy provided:

"Provided always, that this insurance shall not extend to any bodily injury of which there shall be no external and visible sign upon the body of the insured, * * * nor to any death or disability which may have been caused * * * by hernia, bodily infirmities, * * * nor by the taking of poison, contact with poisonous substances, or inhaling of gas."

The decedent was found dead in his bed like a man asleep, without any outward indications that he was dead, and without any external or visible signs of injury upon his body. His death was caused by his breathing the atmosphere of his room, full of illuminating gas. The defendant resisted recovery, and Gray, J., said:

"A careful consideration of this instrument and of the scope and design of its provisions leads us to the conclusion that the appellant must fail in its contention. At the foundation lie the facts, conceded and found, that there was a death caused by accidental means, and that the accidental means were the decedent's 'breathing the atmosphere of said room, full of illuminating

gas.' The absence of any external and visible sign upon the body of the assured presents no embarrassment. * * * Such a provision obviously was designed as a proper precaution to guard the company against a liability upon a fraudulent claim by the insured for indemnity for bodily injuries, of which the only evidence might be the word of the person. This policy, like any other contract between parties, is to be construed, not merely by the letter, but by the spirit. We must read it in connection with the whole subject-matter to which it relates, and give to language the ordinary and natural meaning. If, then, the intention of the parties becomes manifest, such intention must prevail."

And it held that the plaintiff could recover.

In Menneily v. Employers' Liability Assurance Co., 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716, the policy contained the following clause:

"This policy does not insure against death or disablement * * * from accidents that shall bear no external and visible marks, * * * nor against death or disablement arising from anything accidentally taken, administered or inhaled, contact of poisonous substances, inhaling gas, or any surgical operation or exhaustion consequent thereon."

Judgment was directed for the defendant on the ground that it was not liable because the cause of death of the insured was within the exception in the policy as to death arising from anything accidentally taken, administered, or inhaled. This was likewise a gas case. The court held that the facts were so nearly like those in the Paul Case that no distinction between them existed. The court went on to say:

"The only remaining question relates to the provision which declares that the policy 'does not insure against death or disablement * * * from accidents that shall bear no external and visible marks.' It is somewhat difficult to understand precisely what was intended by this clause of the policy. We are, however, of the opinion that the language employed, when fairly construed, indicates that its purpose was to provide that a case of death or injury should not be regarded as within the policy, unless there was some external or visible evidence which indicated that it was accidental. In other words, that only such injury as could be shown by external and visible evidence to have been accidental should be regarded as within the policy. In this case it is admitted that the decedent's death was occasioned by his involuntarily and accidentally breathing illuminating gas, which had accidentally escaped into his room; that there was no visible marks of the accident upon the body of the deceased, but, when artificial respiration was produced, illuminating gas emanated therefrom to the perception of the person producing such artificial respiration; that upon entering the room it was perceived to be full of gas then escaping therein, and that an inspection of the body showed life to be extinct. We think this admission furnishes sufficient evidence of an external and visible character that the death of the decedent was accidental to exclude it from this exception in the policy, and hence that it was one of the accidents against which the defendant intended to insure."

In that case the exhalation of gas was momentary. It was not visible. It did not remain for the inspection of the company's officers or doctors. It is difficult to conceive of anything more evanescent, and, yet the clause did not stand in the way of a recovery. The court interpreted the language "visible marks upon the body" as meaning "unless there was some external or visible evidence which indicated that it was accidental."

This burglary was evidenced by visible signs and marks upon the premises, because the witnesses saw the forcible and violent entry

thereon and the attending circumstances, to which they testified and about which there is no dispute. I think that the loss came within the risk covered by the policy.

The judgment and order appealed from should be affirmed, with costs.

LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). This is an appeal from a judgment against a surety company upon a policy of insurance against loss by burglary. There is no dispute as to the facts; the only question involved in the appeal being whether or not the loss which the plaintiffs suffered was covered by the terms of the policy. The plaintiffs were merchants dealing, at wholesale, in silk goods. The circumstances attending the loss were as follows: On June 27, 1907, and while this policy was in full force, two of the employés of plaintiff entered the store at about 7:30 in the morning to prepare for business. They opened the door of the loft with a key (there being no other fastening than a lock), and shut the door after entering, but did not lock it, and it was left so that by turning the handle of the door attached to the lock the tongue would slide, and the door could be opened. A few minutes later, Kennedy, a former employé of plaintiffs, accompanied by his younger brother, threw open the door of said store and entered, with a pistol in each hand, and threatened and beat one of the clerks, and then bound and gagged both of them, and robbed the store of silks valued at about $1,050. The police and the defendant company were at once notified and an examination was made. The burglars were afterwards arrested, but the goods were never recovered. A verdict was directed in favor of plaintiffs for the value of the stolen property and interest.

The policy sued upon undertook to insure the plaintiffs:

"For direct loss by burglary of any of the merchandise described in the schedule hereinafter contained and stated to be insured hereunder occasioned by a felonious abstraction from the store, warehouse, office, loft or rooms, hereinafter called the premises and actually occupied by the assured in the manner set forth in the schedule, by any person or persons who have made *forcible and violent entrance* upon the premises, or exit therefrom, *of which force and violence there shall be visible evidence.*"

Included in the terms of the policy were certain clauses denominated "special agreements," the first of which read as follows:

"A. The company shall not be liable: (1) Unless there are *visible marks upon the premises* of the *actual force or violence* used in making entry into the said premises or exit therefrom."

Naturally, since it had been necessary to use no force to effect an entrance beyond that required to turn the door knob, there were no visible marks upon the premises of actual force or violence used in making entry, and the claim of the appellant is that it did not undertake to insure against loss by such a crime as the evidence shows was committed in this case. If the policy had undertaken in general terms to insure the plaintiffs against loss by "burglary" without lim-

iting or defining the meaning of that word as used in the policy, there would be no doubt of the defendant's liability, for the crime as described by the witnesses undoubtedly amounted to a burglary in this state. Pen. Law (Consol Laws, c. 40) §§ 400–404. That, however, is not what the defendant insured against. Its undertaking was to indemnify plaintiffs against a loss by burglary committed by persons, who not only have made "forcible and violent" entrance upon or exit from the premises, but of whose force and violence there shall be "visible evidence."

The words "force" and "violence" are words in common use and of perfectly well-understood meaning. It is said that the conduct of the thieves was forcible and violent towards the clerks whom they found in the store, but that this is not what was contemplated by the policy is made clear by the special agreement which relieves defendant from responsibility unless the visible marks of force and violence are to be found "upon the premises." The respondent urges that the provision in the special agreement is a mere rule of evidence. It is undoubtedly that, but it also serves to define the nature of the force, and violence which must accompany the crime in order to bring the loss within the policy.

The respondent relies upon a line of well-known cases which have arisen under life and accident insurance policies wherein it has been stipulated that they should not extend to death or disability of which there should be no external or visible signs. Gale v. Mut. Aid, etc., Ass'n, 66 Hun, 600, 21 N. Y. Supp. 893; Root v. London Guarantee Co., 92 App. Div. 578, 86 N. Y. Supp. 1055; Menneily v. Employers' Liability Ass'n, 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716; Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758; Mut. Accident Ins. Co. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60. In all of these cases it was considered that the condition was merely a rule of evidence, designed to protect the insurer against fraud, and when it clearly appeared, by evidence other than the external or visible signs, that the death or injury was one of those against which it was intended to insure, the courts have found the condition satisfied by almost anything, however slight, that could by any possibility be construed as an external or visible sign. The present case differs from those in two respects. In the first place, there is not the slightest evidence of any visible marks, at all, upon the premises resulting from actual force and violence, and in the second place, as already pointed out, the fact that the burglary must be accompanied by force and violence in order to be covered by the insurance characterizes the nature of the loss against which the plaintiffs were insured. In my opinion the plaintiffs failed to show that they had suffered loss from the kind of burglary which the policy insured against, and therefore the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., concurs.