## Laurette K. Eirich v. State Mutual Life Assurance Company.

Maltbie, C. J., Avery, Brown, Jennings and Ells, Js.

Argued October 4—decided November 6, 1940.

*Daniel D. Morgan* and *Norton M. Levine,* with whom, on the brief, was *Israel Jacobs,* for the appellant (plaintiff).

*Robert P. Anderson,* with whom, on the brief, was *J. Rodney Smith,* for the appellee (defendant).

Brown, J.   The plaintiff brought this action in two counts to recover under identical double indemnity provisions of two policies of insurance upon her husband's life issued by the defendant, in each of which she is named beneficiary.   The facts are not in dispute,

and have been stipulated by the parties. By the supplemental agreement in each policy the defendant agreed to pay to the plaintiff as beneficiary double indemnity in case of accidental death of the insured, but the contract states: "This provision shall not cover death resulting directly or indirectly from self-destruction, while sane or insane; . . . or from poisoning or asphyxiation. The Company shall have the right and opportunity to examine the body and make an autopsy unless prohibited by law." The insured was in good health and complied with all provisions of the policy. He died an accidental death caused by poisoning under these circumstances: About noon on May 16, 1938, he ate a meal of pork chops, gravy, string beans, potatoes, bread, butter and beer in a restaurant in New Haven. Almost immediately he became nauseated and vomited. Soon after he was taken violently ill and was removed in a state of collapse to a hospital, where he died at 8.40 p. m. the same day. An autopsy and chemical analysis of the contents of his stomach and intestines showed that death was due to poisoning by arsenic and barium salts in quantities more than sufficient to kill a human being. These chemicals are two active ingredients in a common rat poison known as "Rough on Rats." The taking of the poison was accidental and not for medicinal purposes, and the insured did not consume it consciously, or intentionally. The defendant paid upon each policy the $2500 life insurance specified apart from the double indemnity. The court gave judgment for the defendant. The sole question for determination is whether the defendant is absolved from the further payment of double indemnity by virtue of the provision above quoted contained in the supplemental agreement.

The plaintiff contends that the words "death resulting . . . from poisoning," definitive of the defendant's

exemption from liability are ambiguous, and that therefore the familiar rule that where there is room for two constructions, the words used should be interpreted most strongly against the insurer applies. *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 423, 172 Atl. 777; *Morehouse* v. *Employers' Liability Assurance Corp.*, 119 Conn. 416, 426, 177 Atl. 568. Upon the facts of the present case, however, the words quoted disclose no ambiguity warranting resort to this principle. The death of the insured was beyond question caused by poisoning within the common and ordinary meaning of that word. It was with this meaning that the word "poisoning" in the exemption was used by the parties to this contract of insurance. *Price-Williams* v. *New York Life Ins. Co.*, 101 Fed. (2d) 482, 484; *Equitable Life Assurance Society* v. *Hemenover*, 100 Col. 231, 236, 67 Pac. (2d) 80, 82, 110 A. L. R. 1270, Note 1278; 2 A. L. R. 57, Note; *Hahn* v. *Home Life Ins. Co.*, 169 Tenn. 232, 84 S. W. (2d) 361; *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 Atl. 289; *Aschenbrenner* v. *United States Fidelity & Guaranty Co.*, 292 U. S. 80, 85, 54 Sup. Ct. 590. Accordingly the express and positive policy exemption from liability for death "from poisoning," bars the plaintiff's right of recovery. *Urian* v. *Scranton Life Ins. Co.*, 310 Pa. St. 144, 165 Atl. 21; *United Fidelity Life Ins. Co.* v. *Roach* (Tex. Civ. App.) 63 S. W. (2d) 723. Two of the cases relied upon by the plaintiff as authority to the contrary, are clearly distinguishable when under the above rule the words of exemption employed are accorded their common and ordinary meaning. In one of them, instead of a poisoning by arsenic consumed as here, the death was due to an overdose of medicine (*Equitable Life Assurance* case, supra), while in the other it resulted from the eating of tainted food (*Hahn* case, supra), and in both it was held that death was

not due to poisoning within the common conception of the term or the meaning of the policy.

The plaintiff further contends that the exemption should be construed as inapplicable to bar recovery because the poison was not taken by the voluntary, conscious or intelligent act of the insured. In support of this contention she relies upon the case of *Paul* v. *Travelers Ins. Co.*, 112 N. Y. 472, 20 N. E. 347, and a number of cases since decided reaching a like conclusion upon the reasoning and authority of that decision. That was an action upon an accident policy for the death of the insured caused by breathing, while asleep, the atmosphere of a room filled with illuminating gas. The terms of the policy exempted the defendant company from liability for "death . . . caused . . . by the taking of poison, . . . or inhaling of gas." In holding the defendant liable the court said (p. 478): "in expressing its intention not to be liable for death from 'inhaling of gas,' the company can only be understood to mean a voluntary and intelligent act by the insured, and not an involuntary and unconscious act. . . . To inhale gas requires an act of volition on the person's part before the danger is incurred . . . if the exception is to cover all cases where death is caused by the presence of gas, there would be no reason for using the word 'inhale.' If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant [defendant] now says is meant by the present phrase, and there could have been no room for doubt or mistake." The exemption provision of the policy in all but one of the cases cited by the plaintiff to this point was like that held in the *Paul* case to involve the doing of some voluntary act by the insured. For example: In *Pickett* v. *Pacific Mutual Life Ins. Co.*, 144 Pa. St. 79, 91, 22 Atl. 871,

the words are *"inhalation* of gas"; in *Travelers Ins. Co.* v. *Dunlap,* 160 Ill. 642, 43 N. E. 765, "taking poison"; in *Dezell* v. *Fidelity & Casualty Co.,* 176 Mo. 253, 285, 75 S. W. 1102, "poison or anything accidentally or otherwise taken, administered, absorbed or inhaled"; and in *Lowenstein* v. *Fidelity & Casualty Co.,* 88 Fed. 474, 479, affirmed 97 Fed. 17, 19, and in *Fidelity & Casualty Co.* v. *Waterman,* 161 Ill. 632, 44 N. E. 283, wording included in that of the *Dezell* case. As is clear from the above quotation from the court's opinion in the *Paul* case it is the use in the exemption clause of the word "inhale," construed as calling for voluntary and intelligent action by the insured, which is made the basis of its conclusion that words are to be read into the policy which render the defendant liable for death ensuing upon his involuntary and unconscious act in inhaling gas. It is equally clear, however, that had the word "inhaling" been omitted, so that the clause read "death caused by gas," the court would have held it effective to excuse the defendant from liability. See *Lowenstein* v. *Fidelity & Casualty Co.,* supra, 476; *Early* v. *Standard Life & Accident Ins. Co.,* 113 Mich. 58, 71 N. W. 500; *Riley* v. *Inter-State Business Men's Accident Asso.,* 177 Iowa 449, 159 N. W. 203, and 184 Iowa 1124, 169 N. W. 448, 2 A. L. R. 57. That is the situation presented in the case before us by the wording "death resulting . . . from poisoning." The only case cited by the plaintiff with an exemption provision analogous to that in this case is *Travelers Ins. Co.* v. *Ayers,* 217 Ill. 390, 75 N. E. 506. The words there were "death . . . resulting . . . from any gas or vapor." The court in rendering judgment for the plaintiff relied upon the *Paul* case and the cases following it, for authority, but disregarded the difference in wording of the exemption clauses.

The statement of the court in concluding its opinion in *Urian* v. *Scranton Life Ins. Co.*, supra (p. 154), well states the rule which is in accord with the authorities and conclusive of the present case, in these words: "It is plain to us that where, as here, an accident policy, whose language is clear and unambiguous, states as an exception from liability that which is simply a cause, without any reference therein to a possible act or omission to act by the insured or any other person, which might be, as respects that cause, either intentional or unintentional, no recovery can be had in cases where the injury or death is due to that cause, unless there is, in the policy, some other provision requiring a different conclusion to be reached." No other policy provision in the case before us requires a different conclusion.

There is no error.

In this opinion the other judges concurred.