In the case of Wittleder v. Illuminating Co., 47 App. Div. 410, 62 N. Y. Supp. 297, Id., 50 App. Div. 478, 64 N. Y. Supp. 114, the plaintiff was injured by contact with a high-voltage electric light wire strung and maintained within a few inches of the stairway leading to an elevated railroad station. The plaintiff was a boy about 10 years of age, and was, at the time of the accident, at play upon the stairway. The stairway belonged, not to the defendant, but to the elevated railroad company, and, being designed for the use of the public, it was not competent for the court to say, as a matter of law, that the plaintiff was not there by the invitation of the railroad company. The complaint in that action alleged that the defendant "negligently constructed and operated" the wire "within one foot of, and unlawfully and dangerously near, the platform," and that it "was not sufficiently nor properly nor carefully insulated nor covered nor protected," while in the case at bar there is no evidence of any negligence in the construction, but the fault is alleged in that the guard wires had, through negligence, become charged with electricity. This was, at most, a mere passive negligence, as to which the plaintiff has no right, under the circumstances, to complain. In the case cited (50 App. Div. 481, 64 N. Y. Supp. 114), the court points out that:

"In the present case the stringing of a live electric wire, contact with which will inflict severe injuries, if it does not kill, in such close proximity to a thoroughfare along which large numbers of people pass, who are liable to come in contact with it, is an act so dangerous in character, and so liable to inflict injury, as to remove the case from the authority of those cases exempting from passive negligence, and place it in the category of active negligence."

This is quite a different case from that presented in the case at bar, where the wire which caused the injury was designed to be a dead wire, and which was removed some 14 or 15 feet from the passageway, which was open to the public, and which could only be reached by climbing upon the superstructure of the bridge. If this wire, through some accident (and it may have been through the negligence of some one other than the defendant, so far as the evidence shows), became charged with electricity, it did not violate any duty which the defendant owed to the plaintiff under the circumstances disclosed by the evidence, and the motion to dismiss the complaint was properly granted. The order appealed from should be reversed.

Order vacating order dismissing complaint reversed, with costs. All concur, except BARTLETT, J., absent.

---

EWING v. COMMERCIAL TRAVELERS' MUT. ACC. ASS'N OF AMERICA.

(Supreme Court, Appellate Division, Third Department. November 16, 1900.)

1. ACCIDENT INSURANCE—NOTICE—SUFFICIENCY.

Where an accident policy provided that immediate notice, with full particulars, should be given to the company of any accident or injury as a condition to recovery, failure to give notice until two weeks after decedent's death, and until an autopsy had been made, and the body in-

terred, will not prevent a recovery where there was evidence that the cause of death was unknown until after the autopsy, and hence plaintiff had no knowledge as to whether insured died from accidental injury within the terms of the policy, notice being sent promptly on the day after receipt of the report of the chemist who made the analysis.

2. SAME—PROVISION OF POLICY FOR EXAMINATION.
Where an accident insurance policy provided that defendant's medical adviser shall be allowed to examine the person of any member in respect to any alleged injury or cause of death as often as may be necessary or reasonably required by the company, it is no defense to an action on the policy that an examination of decedent's body was refused, when it appeared that the first application for examination was made nearly a month after the burial, and that immediately after death an autopsy was made under direction of the coroner, and the organs affected removed from the body, and not subsequently replaced.

Parker, P. J., dissenting.

Appeal from trial term.

Action by Alexander L. Ewing against the Commercial Travelers' Mutual Accident Association of America on an accident insurance policy. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

In 1890 the defendant issued to Alexander L. Ewing, Jr., a policy of insurance, and thereby made him a member of its association. The terms of the policy, in brief, made the father of this member, the plaintiff in this action. the beneficiary in case of the death of the assured, and in case of partial disability the assured was entitled to the benefits. While the policy was in force, and on June 23, 1897, the assured died. It is claimed that his death was caused by an overdose of morphine accidentally taken. No notice of death was given to defendant until July 9, 1897. This was after an autopsy had been made, and the body interred. The policy provides, as a condition to a recovery, that immediate notice shall be given in writing of the accident or injury, with full particulars. The policy also provides further that the medical adviser of the defendant "shall be allowed to examine the person of any member in respect to any alleged injury or cause of death then and so often as may be necessary or reasonably required on behalf of the association."

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

M. W. Van Auken (W. A. Matteson, of counsel), for appellant.
A. C. & J. P. Eustace (J. P. Eustace, of counsel), for respondent.

KELLOGG, J.   There seems to have been evidence sufficient at the trial of this action to justify the jury in finding that the deceased (Alexander L. Ewing, Jr.) died from the effects of morphine taken accidentally, and without design, and not taken "while the member was, or in consequence of his having been, under the influence of intoxicating drinks." Aside from errors at law alleged to have been committed at the trial, the defendant urges that the proof shows that defendant did not have the notice stipulated for in the policy,—"immediate notice of the accident or injury, with full particulars." The evidence on this subject seems to be undisputed. The deceased died June 23, 1897, at Scranton, Pa. He was buried at his home in Elmira, June 26, 1897. The beneficiary in case of death (the plaintiff here) was, at the time of death, traveling, but was at the burial. He testifies that at this time he did not know the cause of death, and no one knew until after

the report of the chemist who had in charge the stomach and other organs of the deceased for chemical analysis; that he received the report from the chemist on the 8th or 9th of July following, and on July 9th notified defendant. What he says would warrant the conclusion that plaintiff had no knowledge, before the chemist's report, that he had any claim which he could make against de-' fendant under the policy. The term "immediate" should be interpreted reasonably. . Trippe v. Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432. The context in which the word is here found implies that, before notice is given, the "full particulars" must be first discovered by the person required to give the notice. Assuming that plaintiff testified to the truth, I think it might properly he held as a matter of law that the notice given fully complied with the condition of the policy. As a question of fact, the jury, it seems, reached the right conclusion. The defendant also urges that it was not permitted to examine the body of deceased. The first application defendant made was on July 18, 1897, nearly a month after the burial. It is in proof that immediately after death an autopsy had been made in the public interest under the direction of the coroner at Scranton, Pa., and the stomach and other organs had been taken away, and these were not replaced with the body. The application made July 18th was to this plaintiff, who declined to give any consent. Subsequently application was made to the widow of deceased, who had the lawful custody of the buried body, and she positively refused, stating as reasons that one public examination had been made, and the organs affected were not there. The court submitted the question to the jury as to the reasonableness of this request for an examination by defendant. The clause in the policy under which this right was claimed reads as follows:

"No claim shall be payable under this certificate unless any medical adviser of the association shall be allowed to examine the person of the member in respect to any alleged injury or cause of death when and so often as may be necessary or reasonably required on behalf of the association."

If this should be interpreted as conferring upon the insurance. company an absolute and unconditional right to exhume and examine at least once the body of any member on pain of forfeiture of the right to recover, it would be giving to it the full force which defendant claims for it. If a body should, by the living relatives, be cremated, instead of buried in the ground, no recovery could be had under the policy. But does this clause necessarily mean so much? The contract is with a member of the association. It is in part for the benefit of the assured. In case of partial disability from accidental causes the assured is to receive the benefits, and he agrees that the medical adviser shall be allowed to examine his person,—"the person of the member." There is no express stipulation here that the defendant may dissect the body of the member; no stipulation for a forfeiture, should any relative having lawful custody of the body of a deceased member refuse to permit it to be dug up and dissected. I think the policy holder interpreting this clause to bind the member so long as the member has control of his own person would place upon it a rational construction. If

this right to "examine the person of a member" in respect to any "cause of death" is extended for a reasonable time after death, and so long as the body is unburied, or not finally disposed of, I think the utmost limit of the privilege stipulated for would be reached. Thereafter other interests than the wishes of the beneficiary or the expressed wishes of the contracting member while living might reasonably be expected to prevail. In any case, I think a party who alleges a contract right to invade the tomb, or the graves of the buried dead, should be sure of the language of his written agreement. It should at least be unmistakably clear. The purpose should be apparent, and the terms so plain that inference or conjecture need not be resorted to to discover the true intent of the contracting parties. If the policy in question in plain terms stated to an applicant for membership that by accepting membership the applicant bartered to the insurer the right at any time to dig up and examine or dissect his dead body, it is quite conceivable that there would be few applicants for membership.

The exceptions taken by defendant to the admission of testimony do not call for a reversal. I think the testimony was in every instance admissible. The exceptions to the charge to the jury as corrected by the presiding justice disclose no reversible error.

The judgment should be affirmed, with costs. All concur, except PARKER, P. J., who dissents. MERWIN and SMITH, JJ., concur in result.