### ROOT v. LONDON GUARANTEE & ACCIDENT CO., Limited.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. ACCIDENT INSURANCE—VISIBLE MARKS ON BODY.
 In case of injury from an accidental fall, death resulting from angina pectoris caused thereby, insured's pallor appearing immediately after the accident, and his emaciation and decline following, are visible marks on the body, within the provision of the policy that the insurance does not cover injuries of which there is no visible mark on the body.

2. SAME—NOTICE.
 The requirement of an accident policy that notice to the company shall contain "full particulars of the accident" is satisfied, so far as concerns the particulars of the injury, though in the notice given the day after the accident the injury is stated to be a broken hip bone, while there were internal injuries, not then known, resulting in death through angina pectoris.

3. SAME—MEDICAL EXAMINATION BY COMPANY—DELAY IN APPLICATION.
 An accident policy provided that any medical examiner of the company should be allowed to examine the body of insured. Though the company,

¶ 3. See Insurance, vol. 28, Cent. Dig. § 1356.

on the day following insured's death, knew of it, it did not apply for an autopsy till the day after the burial, which was three days after the death. *Held*, that the delay in making the application was unreasonable.

4. SAME—REFUSAL OF EXAMINATION.

Though examination of the body of insured by the company's examiner, authorized by the accident policy, was refused, this will not prevent recovery on the policy; the application being made to, and the refusal being by, one not a relative of deceased, and who was not till thereafter appointed as his administrator.

Appeal from Trial Term, Erie County.

Action by Marshall J. Root, administrator, against the London Guarantee & Accident Company, Limited. From a judgment for $5,322.48 on a verdict for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Frank Gibbons, for appellant.

Louis L. Babcock, for respondent.

SPRING, J.   This action is by the administrator of John B. Crosby, deceased, to recover on an accident policy issued by the defendant December 3, 1901, for one year, and which insured against death by accidental means.   The proof shows that Crosby fell from a bicycle on Irving Place, in the city of Buffalo, on the 20th day of June, 1902, fracturing his right femur, and, it is claimed, sustaining other injuries, which culminated in his death on the 10th day of August following. At the time of the accident, Crosby was 51 years of age, of robust health, vigorous in his mode of life, temperate in his habits, and careful of his diet.   Immediately after the accident his face was pallid, and he became emaciated, and complained constantly of intense pain in his back, between the shoulder blades, and in his chest.   These anginal pains increased in intensity, and the spasms were intermittent and prostrating, to the time of his death.   From the evening of the injury he was unable to lie down, but was compelled to sit up, by reason of the severity of the heart spasms.   The fractured femur recovered, and this injury did not necessitate his sitting up.   The physicians, in response to a hypothetical question fairly containing the facts proven, attributed the death to angina pectoris, caused by the accident in falling from his bicycle.

The evidence of the laymen corroborated the professional opinions of the plaintiff's medical experts.   Miss Slater, who saw him daily, testified:

"He was very pale. The foot of the bed was raised, and he was all built up with pillows. He assumed in bed almost a right angle—almost sitting upright. I saw him from time to time from this first Saturday after the injury up to the time of his death almost every day. I would visit him both at the General Hospital and at Mr. Root's house. He was pale and weak, and grew weaker every day. When I would go in the morning, I would ask him how he felt. He would say that he didn't seem to have much trouble with the hip, but the pains of the back and chest still continued, and he seemed to grow weaker every day. His position in bed was just the same, about, as it was— Well, the limb was laid straighter, but he was almost sitting up in bed. I never saw him, during all this period, lie down."

Cochrane, who was also with him every day, described his condition, saying:

"He was injured on Friday evening. I saw him on Saturday afternoon. In appearance, he was a man that was suffering a great deal. He was sitting in bed, or, at least, he was propped in bed, at about an obtuse angle to a right. He was very pale, and he complained to me about his general discomfort and suffering. He said he suffered more in his body than he did from the broken leg."

He also said that the pains complained of were between the shoulder blades and in his back.

The fact, therefore, appears that Crosby, an athletic man, in vigorous health and in the prime of life, began to decline from the day of the injury, and progressively weakened until death intervened. The jury were amply justified from the evidence in finding that his death was due to the injury received in the fall from the bicycle, and which was sufficiently violent to break the large bone of his hip.

By the provisions of the policy, the defendant insured Crosby in the sum of $5,000 "against bodily injuries sustained wholly and exclusively through external violence occasioned accidentally by visible means." It further provides "that this insurance does not cover injuries of which there is no visible mark on the body (the body itself in case of death not being deemed such mark)." The physicians testified that the heart spasms were not attributable to a broken femur. There was no visible mark on the back or chest, and the appellant contends that the anginal pains, even though resulting from the accident, do not bring the case within the compass of the policy. We think this is too narrow a construction to put upon its language. Where it is plain that an accident has occurred, and severe injuries have resulted, and it is a fair deduction from the circumstances that death ensued as the direct consequence of such accident, the policy should be construed to hold the defendant liable, even though no contusions or marks appear upon the body. A man may be killed by a blow over the heart, or by drowning, or by falling from a balloon, and death ensue before reaching the ground, and in each instance there may be no mark upon the body, yet the death is by accidental means, and should be within the purview of the policy.

In Menneiley v. Empire Liability Assurance Co., 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716, the policy contained the clause that it "does not insure against death or disablement * * * from accidents that shall bear no external and visible marks." The insured met his death while in bed, from the inhalation of illuminating gas, but there was no mark upon his body. The Court of Appeals, in construing this provision, say at page 602, 148 N. Y., page 56, 43 N. E., 31 L. R. A. 686, 51 Am. St. Rep. 716:

"It is somewhat difficult to understand precisely what was intended by this clause of the policy. We are, however, of the opinion that the language employed, when fairly construed, indicates that its purpose was to provide that a case of death or injury should not be regarded as within the policy, unless there was some external or visible evidence which indicated that it was accidental. In other words, that only such injury as could be shown by external and visible evidence to have been accidental should be regarded as within the policy."

86 N.Y.S.—67

The court further say that illuminating gas was discoverable in the room, and emanated from his body upon the production of artificial respiration, and the court add:

"We think this admission furnishes sufficient evidence of an external and visible character that the death of the decedent was accidental to exclude it from this exception in the policy, and hence that it was one of the accidents against which the defendant intended to insure."

Crosby's pallor and emaciation and decline were apparent after the accident, and furnished visible signs of the injuries. In Mutual Accident Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, the insured jumped from a platform to the ground, and died nine days thereafter, and there was no mark upon his person. The policy excluded "any bodily injuries in which there shall be no external and visible sign." The court, in charging the jury, said at page 111, 131 U. S., page 760, 9 Sup. Ct., 33 L. Ed. 60:

"Complaint of internal soreness is not such a sign, for that you cannot see, but if the internal injury produces, for example, a pale and sickly look in the face; if it causes vomiting or retching, or bloody or unnatural discharges from the bowels; if, in short, it sends forth to the observation of the eye, in the struggle of nature, any signs of the injury—then those are external and visible signs, provided they are the direct results of the injury."

A recovery was had, which was sustained in the United States Supreme Court. See, also, Gale v. Mutual Aid & Accident Association, 66 Hun, 600, 21 N. Y. Supp. 893.

The defendant evidently intended that this clause should exclude liability in case of death from accident unless there is a visible mark upon the body. It is very doubtful whether the scope of the language will be so extended, in any event. Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758; McGlinchey v. Fidelity, etc., Ins. Co., 80 Me. 251, 14 Atl. 13, 6 Am. St. Rep. 190.

The appellant claims that proper notice of the character of the accident was not given. The policy required that the written notice shall contain "full particulars of the accident." On the day after the accident, Crosby signed a written notice describing in detail the manner and time of the accident, and that the injury sustained was a broken hip bone. That was the sole injury, so far as he knew, and the physician in attendance did not appreciate the import of the pain of which he complained. He gave to the defendant the best information he possessed, or that was available at the time.

The proofs of death furnished to the defendant were sufficiently explicit. Dr. Hopkins described the manner of the accident, and the injuries and cause of death, as follows:

"On June 20, 1902, he fell from his wheel, receiving a fracture of his right femur, and some injury to his chest, which resulted in an attack of angina pectoris, from which he died."

The policy contains the provision "that any medical examiner of the company shall be allowed to examine * * * the body of the assured." Crosby died on Sunday, and was buried on Wednesday. On Thursday Mr. Williams, a representative of the defendant, applied to have an autopsy performed. Mr. Root declined to have the body exhumed for that purpose. He was not a relative of the decedent,

and had not then been appointed administrator. It was not within his province to grant the privilege. There is no suggestion that any application for the autopsy was ever made to the relatives of the decedent. Mr. Williams knew of Mr. Crosby's death the day after it occurred, and conversed with the plaintiff on that day, but did not then ask that an autopsy be made at the instance of the defendant. The delay until after the burial was unreasonable. Wehle v. U. S. Mut. Accident Ass'n, 153 N. Y. 116, 47 N. E. 35, 60 Am. St. Rep. 598; Ewing v. Commercial Travelers' Mut. Accident Association of America, 55 App. Div. 241, 66 N. Y. Supp. 1056. The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.