DANAHY v. KELLOGG.

(Supreme Court, Special Term, Erie County. December 31, 1910.)

1. DISCOVERY (§ 88*)—DISCOVERY AND INSPECTION OF BURIED HUMAN BODY—STATUTES.

In view of Penal Law (Consol. Laws, c. 40) § 2210 et seq., relating to sepulture, prohibiting dissection except as authorized by law, and prohibiting the removal of a buried body without authority of law, etc., Code Civ. Proc. § 803, as amended by Laws 1909, c. 173, so as to authorize the court to compel a party to make discovery of any article or property under his control in addition to the power to compel inspection of a book, document, or other paper as originally conferred, does not authorize the court to order the production and inspection of a buried human body.

[Ed. Note.—For other cases, see Discovery, Dec. Dig. § 88.*]

2. DISCOVERY (§ 104*)—DISCOVERY AND INSPECTION OF BURIED HUMAN BODY—STATUTES.

Even if Code Civ. Proc. § 803, as amended by Laws 1909, c. 173, authorizing the court to compel a party to make discovery of any article or property under his control, be construed as authorizing the court to order the production and inspection of a buried human body, it does not authorize the court to permit a dissection of the body and an examination of the contents thereof.

[Ed. Note.—For other cases, see Discovery, Dec. Dig. § 104.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. DEAD BODIES (§ 1\*)—PROPERTY.

> There is no right of property in a dead human body, though the surviving husband, widow, or next of kin may under the law protect the remains and save them from desecration and enforce the right by appropriate remedies.
>
> [Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.\*]

Action by Louise V. Danahy, administratrix of Matthew Danahy, deceased, against Spencer Kellogg. Motion by defendant for a discovery and inspection of the body of the deceased. Denied.

Ralph S. Kent, for the motion.
Elijah Holt, opposed.

WHEELER, J. This action was brought by the plaintiff, as the representative of the next of kin of Matthew Danahy, deceased, to recover damages for his death, alleged to have been caused by injuries received in a collision with an automobile claimed to have been owned by the defendant. The accident happened on the 10th day of July, 1909, and the death of Matthew Danahy occurred on the 20th day of November, 1910. The certificate of death signed and filed by the attending physician stated the cause of death to have been malignant endocarditis. The petition on this motion states that the disease known as malignant endocarditis is a disease affecting the interior of the heart, and is caused by a germ, or septic condition of the blood, and usually results from causes which are in no way attributable to injuries received in an accident; that the precise cause of the said disease may be determined by an examination of the heart and its conditions after death; that upon such examination cultures from the heart can be made and obtained which will determine the germ or cause of the septic condition, and in that manner ascertain the precise cause of the disease which produced death. After some further allegations, the petition closes with a prayer that an order may be made giving the defendant a discovery and inspection, and permission to take cultures of the dead body, and to examine the contents thereof by microscope and other aids to scientific men; and that such inspection and discovery be made by requiring the plaintiff, as widow and representative of the heirs and next of kin of the deceased, to consent and permit the defendant and his representatives to dissect said body, and examine the contents thereof by microscope, culture, and observations. The plaintiff, by her counsel, opposes, and strenuously objects to the granting of the order asked; and challenges the right of the defendant to the inspection desired, and in opposition reads affidavits made by the attending physicians and others, tending to show that, owing to the use of embalming fluid, it would be impossible at the present time for physicians or others to ascertain from the inspection demanded the information desired.

This is the first application of the kind ever made, so far as we are aware. We are of the opinion the application of the defendant should be denied; but, in denying the motion, we base our decision squarely

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon the absence of any right or authority in the court to grant the inspection asked.

The defendant bases his claim to the right to inspect the remains of the deceased upon the provisions of section 803 of the Code of Civil Procedure, which was amended by Laws 1909, c. 173, to read as follows:

"A court of record, other than a justice's court in a city, has power to compel a party to an action pending therein, to produce and discover, or to give the other party an inspection and copy, or permission to take a copy, of a book, document or other paper, or to make discovery of any article or property, in his possession or under his control, relating to the merits of the action, or of the defense therein."

It is contended that the body of the deceased is an "article" or "property" within the meaning of the section quoted. We, however, do not believe that, when the Legislature passed the amendment in question, it had any intention to include the body of a dead person within the description of an "article" or "property." The section of the Code of Civil Procedure should be construed in view of the defects in the provisions of the section as it previously existed, and which were sought to be remedied by the amendment to the section. Prior to the amendment of 1909, the right of inspection was confined to an inspection and discovery of a "book, document or other paper." This precluded an inspection of machinery and other like things, and many times prevented a party from obtaining evidence essential to the prosecution or defense of an action. It was to remedy this situation, and in the interests of justice, that the section was amended by adding the latter portion as it now stands. It will at once be seen that the Legislature could not have had in mind, when it passed the amendment, an application to exhume remains of a deceased person for the purposes of the section.

The graves of the dead are regarded so sacred that the Legislatures have guarded and protected them against desecration by many provisions of the penal laws of the state.

Section 2210 of the Penal Law (Consol. Laws, c. 40) gives a person the right to direct the manner in which his body shall be disposed of after his death.

Section 2211 provides that, except in cases where the right to dissect is expressly conferred by law, every dead body of a human being must be decently buried.

Section 2213 names the conditions under which the right to dissect a body may be had, and, among others:

"Whenever and so far as the husband, wife or next of kin of the deceased, being charged by law with the duty of burial, may authorize dissection for the purpose of ascertaining the cause of death, and no further."

The next section makes it a misdemeanor for a person to make, cause, or procure to be made, any dissection except by authority of law.

Section 2216 makes it a crime to remove a dead body from a grave without authority of law, for the purposes of dissection, or selling or disposing of the same.

Section 2218 makes it a criminal offense to open a grave for a like purpose, and section 2220 makes it a misdemeanor to obstruct a funeral.

These sections of the penal law of the state were enacted in the interests of decency, and to protect the sentiments of sorrowing relatives from outrage. This legislation is an expression and index of our civilization. The "night encampment" of the dead has for centuries been deemed "God's acre," and "hallowed ground," and the remains of the dead have been permitted to be disturbed only for urgent and sufficient reasons regulated by statute. We cannot suppose, therefore, that, when the Legislature passed the amendment of 1909, it intended to authorize the exhuming of human remains for purposes of inspection. To justify such a course, we think other and more explicit language would have been employed by the Legislature than that used in the section as°it now stands. With these provisions of the Penal Law in full force, it cannot be said that section 803 of the Code of Civil Procedure was intended, in any way, to modify their provisions. More explicit language than that used would seem to have been necessary to bring about that result.

But, even though section 803 authorizes an order for the production and inspection of a buried human body, we find nothing in the section which could possibly authorize its dissection. The defendant asks for permission to "dissect said body * * * and to examine the contents thereof by microscope, culture, and observations"; and it is manifest from the allegations of the petition that nothing less would answer his purposes, or be of any value in arriving at the true cause of Mr. Danahy's death.

If the article to be inspected were a piece of machinery, instead of a human body, the court, under the section relied on, would not be warranted, we think, in making an order permitting the machinery to be taken apart, and a part of it carried away for the purposes of further examination. Much less would the court be justified in permitting an autopsy on a human body.

These considerations alone lead necessarily to a denial of the motion in this case, without being called on to exercise the discretion vested in the court under the section.

Strictly speaking, there is no right of "property" in a dead body. A long line of judicial decisions appear to have established the general doctrine to that effect. Foley v. Phelps, 1 App. Div. 554, 37 N. Y. Supp. 471; Cohen v. Congregation Shearith Israel, 85 App. Div. 65, 82 N. Y. Supp. 918; Buchanan v. Buchanan, 28 Misc. Rep. 261, 59 N. Y. Supp. 810; Weld v. Walker, 130 Mass. 422, 39 Am. Rep. 465; Meagher v. Driscoll, 99 Mass. 281, 96 Am. Dec. 759; Pierce v. Cemetery, 10 R. I. 227, 14 Am. Rep. 667.

The husband, widow, or next of kin have no proprietary interest in human remains, strictly speaking; but the law has been relaxed in that respect to the extent of giving them the right of protecting the remains of the dead and saving them from desecration, which can be enforced by appropriate legal remedies (Foley v. Phelps, 1 App. Div. 554, 37 N. Y. Supp. 471; Cohen v. Congregation, etc., 85 App. Div. 65, 82

N. Y. Supp. 918), which is a right clearly distinguishable from the right of ownership. This right the courts have been jealous to protect and enforce. In a case where, by the terms of an insurance policy, the insurance company was to be allowed the right to "examine the * * * body of the assured," it was held the right must be asserted before burial, and the company had no right to demand an autopsy after the insured had been buried. Root v. London Guarantee & Accident Co., 92 App. Div. 578, 86 N. Y. Supp. 1055, affirmed by the Court of Appeals 180 N. Y. 527, 72 N. E. 1150; Ewing v. Com. Travelers' Accident Ass'n, 55 App. Div. 244, 66 N. Y. Supp. 1056. See, also, Wehle v. U. S. Mut. Accident Ass'n, 153 N. Y. 116, 47 N. E. 35, 60 Am. St. Rep. 598.

These cases illustrate the reluctance with which courts permit any interference with human remains when once interred. They all point to the conclusion that, to justify such action, the authority therefor must be clear and explicit. We fail to find such authority in the provisions of section 803 of the Code of Civil Procedure.

The defendant's motion is therefore denied, with $10 costs of motion.