AMERICAN NAT. INS. CO. v. NUCKOLS.*
(No. 5686.)

(Court of Civil Appeals of Texas. San Antonio.
June 7, 1916. Rehearing Denied June 27,
1916.)

1. INSURANCE ⚙☞556(2) — LIFE INSURANCE—
PROOF OF LOSS — ESTOPPEL — POWER OF
AGENT.

Where the company agent was notified of
death and viewed the body and said he was sat-
isfied and that loss would be paid, and the ad-
juster recognized his authority until suit was
brought, and then denied it, the company was
estopped to deny the agency.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1375; Dec. Dig. ⚙☞556(2).]

2. INSURANCE ⚙☞549 — LIFE INSURANCE —
PROOF OF LOSS—AUTOPSY—TIME.

Where the policy gave the insurer the right
to an autopsy, but it was not demanded at the
time of death, the insurer could not, six weeks
after interment, insist on such right, especially
where it was undisputed that the insured died
by an accident covered by the policy and the
only dispute was whether his neck was broken
or dislocated.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1356; Dec. Dig. ⚙☞549.]

3. INSURANCE ⚙☞549 — LIFE INSURANCE —
PROOF OF LOSS—AUTOPSY—TIME—EXHUMA-
TION.

To give the insurer the right of exhuma-
tion of the insured's body, such right must be
clearly expressed in no uncertain words in the
policy.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1356; Dec. Dig. ⚙☞549.]

4. INSURANCE ⚙☞549 — LIFE INSURANCE —
PROOF OF LOSS—AUTOPSY—TIME—EXHUMA-
TION.

Insurer's right to exhume insured's body, if
covered by right to autopsy, can be exercised
only at once and upon showing that it will
show fraud or mistake.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1356; Dec. Dig. ⚙☞549.]

5. INSURANCE ⚙☞549 — LIFE INSURANCE —
PROOF OF LOSS—AUTOPSY—TIME—EXHUMA-
TION.

Where insurer pleaded that doctors' con-
flicting statements that insured died from broken
neck, and from dislocated neck, meant the same
thing, it could not base its right to an autopsy
on such conflicting statements.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1356; Dec. Dig. ⚙☞549.]

Appeal from District Court, Travis Coun-
ty; Chas. A. Wilcox, Judge.

Action by Maggie Nuckols against the
American National Insurance Company.
Judgment for plaintiff, and defendant ap-
peals. Affirmed.

Williams & Neethe, of Galveston, and N.
A. Stedman, of Austin, for appellant. S. W.
Fisher, N. A. Rector, and Robt. L. Thompson,
all of Austin, for appellee.

FLY, C. J. This suit was brought by ap-
pellee, the surviving wife of Claude A. Nuck-
ols, deceased, to recover the sum of $1,000
insurance on his life, $250 as attorneys' fees,
and 12 per cent. on the $1,000 as damages
for a failure and refusal to pay the amount
of the insurance. It was alleged that deceas-

ed had obtained from appellant a policy in-
suring him against bodily injuries inflicted
through external, violent, and accidental
means; that on May 24, 1914, while said
policy was in full force and effect, deceased
came to his death through external and ac-
cidental means, as provided in the policy,
and within a reasonable time after his death,
namely, on the same day on which Claude
A. Nuckols was killed, and at a time prior to
the burial of his body, appellee gave appel-
lant due notice of the accident and death of
said Claude A. Nuckols, and furnished all
proof required by the policy; and that pay-
ment of the policy had been refused. Appel-
lant admitted the existence and vitality of
the policy, but denied valid notice, and set
up that part of the policy permitting "an
autopsy in case of death." The cause was
tried, without a jury, and judgment rendered
in favor of appellee for $1,045, principal and
interest, $120, the statutory penalty, and at-
torneys' fees for $250, aggregating $1,415.

The facts show that Claude A. Nuckols
was killed on June 24, 1914, by accidentally
falling from an engine in the roundhouse of
a railroad company, upon which he was
working at the time; that his neck was bro-
ken or dislocated by the fall, resulting in im-
mediate death; that on the day after the
accident, and before the interment of the
body, notice was given of the death of Claude
A. Nuckols to G. F. Evans, the local agent in
Travis county, Tex., of appellant, and the
"superintendent of the industrial depart-
ment" of appellant, and he in company with
a relative of the deceased viewed the body
and received information as to how Claude
A. Nuckols had died, and that two physicians
and a justice of the peace had determined
that the neck of deceased was broken. The
agent stated that he was satisfied, and that
the amount of the policy would be paid upon
the proper proofs being made, and the agent
made no request for an autopsy and did not
request a postponement of the burial in order
that he might communicate with the officers
of the company in regard to an autopsy.

On May 26, 1914, the two physicians who
had examined the body made written state-
ments on blanks, furnished by appellant, in
which one physician stated that death was
caused by a broken neck, and the other by
fracture of the cervical vertebra, and on
same day Evans wrote appellant's claim ad-
juster, at Galveston, that Claude A. Nuckols
had met his death by accident while in the
performance of his duties, and requested that
the necessary proof blanks be sent to his
widow, the appellee. The adjuster received
the latter on May 27th. The blanks were
furnished appellee, and on May 28th she
filled them out, stating therein the cause of
death as: "Broken neck caused by fall while
at work." The claim and proofs were at
once forwarded by Evans to the claim ad-
juster, whereupon he wrote to Dr. Hudson,

a railroad physician, asking him the cause of Nuckols' death, and he replied that he did not know the cause of his death. Afterwards the claim adjuster procured the report made by Hudson to his railroad company. On July 13, 1914, more than six weeks after the burial of the body, the adjuster requested an autopsy, which demand was refused. Evans was recognized as the local agent of appellant in its accident department, and the adjuster made no objections as to receiving notice through him. The notices required by the policy were given in the time designated therein and to an agent of the company. We approve the findings of fact made by the trial judge.

[1] Our conclusions of fact dispose of the first, second, third, and fourth assignments of error which assail the findings of fact as to the agency of G. F. Evans. The claim adjuster testified:

"At the time of his accident and death, we did not have any one else in Austin other than Mr. Evans as our representative and agent. He was the only one; it is possible there might have been a traveling man in and out. He was the only man we had here at that time, and had probably five or six subagents under him. He was the boss man here in Austin."

This adjuster was agent in the accident department. The adjuster recognized the authority of the agent until he began to search for something upon which he could predicate a contest, and appellant is estopped from denying Evans' agency. Continental Casualty Co. v. Bridges, 114 S. W. 170. The question of Evans' agency was not raised until this suit was brought, and the only reason given by the adjuster why he did not pay the amount of the policy was that the doctors differed as to what killed deceased.

[2] The evidence was ample to show that the neck of Claude A. Nuckols was either dislocated or broken, and in either event was undoubtedly the cause of his death. While there can be no doubt that the accident caused the death of deceased through the blow on his neck, and an autopsy was utterly unnecessary, still as "it is so nominated in the bond" appellant had the right to an autopsy if it had applied for it in a reasonable time after the death. The adjuster, who it seems was the controlling genius of the corporation, knew on May 28th that two doctors had examined the body of deceased and stated that he died from a broken or dislocated neck, and learned in June that the railroad doctor had stated that he did not know what killed deceased, and yet the body had been in the ground over six weeks when he demanded an autopsy. He knew then, as he and his company have known ever since, that Claude A. Nuckols had lost his life by an accident within the literal terms of the policy, and yet, at that late hour, an autopsy was demanded of a body no doubt in advanced stages of decomposition. No one has ever doubted that the man was killed by an accident for which he was not responsible;

appellant even does not deny this. He was insured by appellant against such an accident, and yet, because one doctor said he was killed by his neck being broken, another, by a dislocation of the cervical vertebra, and another, that he was killed by some cause unknown to him, appellant, six weeks after the interment, wanted an autopsy. The demand was utterly unreasonable and was properly refused. No reason was given or attempted for the delay. There was no evidence tending to show that the death came within any exception exempting from payment and as said in the case of Wehle v. U. S. Accident Ass'n, 153 N. Y. 117, 47 N. E. 35, 60 Am. St. Rep. 598:

"We hold, in this case, that the provision authorizing an examination of the body of the insured should have been availed of immediately upon the receipt of the notice of the death, which was conceded to have been immediately given, and that the delay in the demand for an examination of the body was, as a matter of law, so unreasonable, in the absence of any facts or circumstances excusing it, as to deprive the defendant of any defense to the action upon that ground."

If an autopsy had been held, it could not have altered the fact that deceased died by an accident, and it was utterly immaterial whether death was caused by a broken neck or dislocated vertebra. The man was dead, and dead by an accident insured against by appellant.

In the case of Johnson v. Insurance Co., 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154, an autopsy was demanded at 10:18 a. m., at a time when friends were arriving for the funeral and the body was being prepared. Compliance with the request would have delayed the funeral, and it was held:

"We are of the opinion, however, that the time and circumstances of the demand were such that its refusal did not operate to defeat plaintiff's right of action. We must bear in mind that, except for some formal requirements, and except for the chance that the autopsy would develop facts of which we have no knowledge, the right of action upon this policy had fully accrued. The forfeiture of a right of action through the operation of a condition subsequent will be enforced only where the right to such forfeiture is plain."

[3] It is not pretended that there had been any fraud practiced by the widow of the deceased, or that deceased had not been accidentally killed, or that an autopsy would have revealed anything that would have been of benefit to appellant. Suppose it had been ascertained that deceased died, not from a broken or dislocated neck, but from another cause superinduced by the fall, as must undoubtedly have occurred, what would it have profited appellant? There was no clause in the policy that relieved appellant of liability if the neck of appellant was not broken or dislocated. The provision as to an autopsy was not a warranty, and there was no provision whatever as to exhumation. In order to have the right of exhumation such right must be clearly expressed, and in no un-

certain words, in the policy. Joyce, Ins. § 3491. As said in the case of Ewing v. Commercial & Accident Ass'n, 55 App. Div. 241, 66 N. Y. Supp. 1056, affirmed in 170 N. Y. 590, 63 N. E. 1116:

"In any case, I think a party who alleges a contract right to invade the tomb, or the graves of the buried dead, should be sure of the language of his written agreement. It should at least be unmistakably clear. The purpose should be apparent, and the terms so plain that inference or conjecture need not be resorted to to discover the true intent of the contracting parties. If the policy in question in plain terms stated to an applicant for membership that by accepting membership the applicant bartered to the insurer the right at any time to dig up and examine or dissect his dead body, it is quite conceivable that there would be few applicants for membership."

The policy in question has no such provision, and the right to an autopsy cannot be made broad enough to include a disinterment weeks after burial. Root v. Accident Co., 92 App. Div. 578, 86 N. Y. Supp. 1055, affirmed in 180 N. Y. 527, 72 N. E. 1150. As said in Sudduth v. Travelers' Ins. Co. (C. C.) 106 Fed. 822:

"If there is a fair doubt as to the meaning of the words used in a policy, it should be solved in favor of the insured, because there appears to have been no reason why the plainest words could not have been employed by the company in framing the condition. It may be that the right to dissect a body, even after burial, is or would be an important right to the company; but that would make it all the more necessary for it to express it in language in no way ambiguous or doubtful, or which, in order to effect the company's purpose, would have to be extended beyond its ordinary import."

[4] If the right of an autopsy carried with it the right of exhumation of a body, it must certainly be asked for promptly, and then not to satisfy an idle curiosity or to form the basis for a forfeiture, but it must appear that the desecration of the graves of the dead and the pain inflicted on those left behind will reveal something that will show fraud or mistake and that will inure to the absolute benefit of the insurer. This disposes of the sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error.

[5] Appellant is in no position to contend that it should be entitled, not only to an autopsy, but an exhumation of the body weeks after its burial, because there is a conflict in the statements of the two doctors as to the cause of death, in that one said it was a broken neck and the other fracture of the cervical vertebra, because in its answer appellant pleads that both statements meaning, as defendant understands, the same thing.

Appellant not only waived its right to an autopsy through its agent Evans, who was satisfied as to the proof as to how Claude A. Nuckols died, permitted his burial without protest or objection, but through the failure of the adjuster to demand an autopsy until long after the interment of the body and then for no reason then or afterwards given for violating the grave and giving pain to the relatives of deceased. This court does not recognize the right of appellant to demand its "pound of flesh" and ruthlessly invade the sanctuary of the dead without any efficient reason given therefor. Deceased, according to all the testimony, died by a fall, not intentional on his part, appellant in such case promised to pay his widow $1,000, and it will be required at its hands.

The judgment is affirmed.