BEL H. GOULD, Appellant, *v.* THE TRAVELERS INSURANCE COMPANY, Respondent.

Second Department, April 25, 1935.

*Nathan Frankel,* for the appellant.

*Bernard J. McGlinn* [*William B. Crowell* and *William J. Moran* with him on the brief], for the respondent.

HAGARTY, J. The basis of this action is a policy of insurance issued by the defendant to one Erwin A. Gould, plaintiff's husband, on the 7th day of December, 1929, in which policy the plaintiff is named beneficiary. The insured died on the 7th day of June, 1930.

The insurance, by the terms of the policy, is " against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through external, violent and accidental means (suicide, sane or insane not covered), * * * subject to the provisions and limitations hereinafter contained." Of the standard provisions contained in the policy, the consideration of two is made necessary by the questions presented on this appeal. They are the fourth, which provides that " Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the Company; " and the eighth, which provides that " The Company shall have the right and opportunity to examine the person of the Insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

The insured, at the time of his death, carried four life insurance policies, aggregating $22,500, in addition to the accident insurance policy, the subject of this litigation, all of which, with the exception of one for $2,000, written by the Prudential Insurance Company, were written by this defendant, and all of them, with the exception of one for $10,000 payable to the company employing the insured, were payable to the plaintiff as beneficiary.

At the close of the plaintiff's case the defendant's motion to dismiss the complaint was granted on the grounds, *first*, that the plaintiff had failed to prove that the death of the insured resulted from injuries effected directly and independently of all other causes through external, violent and accidental means, within the provisions of the policy; *second*, that written notice of injury to the insured was not given to the defendant within twenty days after the date of the claimed accident causing such injury; and, *third*, that the plaintiff failed to comply with the conditions precedent, in that she refused the defendant the right to make an autopsy on the body of the deceased.

The claimed accident to the insured occurred on the 19th day of May, 1930. The insured, having died on the 7th day of June, 1930, was buried on the tenth day of June following. On the 9th day of June, 1930, plaintiff, in connection with her claim on the life insurance policies written by the defendant, submitted proof by Dr. Holcomb, the surgeon who operated on the insured, that the " Immediate cause of death " was " Intra-abdominal hemorrhage," resulting from " Probable cancer of the intestines." On that statement by the surgeon, the amounts of the life insurance policies were paid. Subsequently, and on the 12th day of June, 1930, a letter was addressed to the defendant wherein it was stated that the insured died " as a result of an accident." That was the first intimation had by the defendant that a claim under the accident policy was to be made. Thereafter, and on the 11th day of July, 1930, demand was made on the plaintiff by the defendant for an autopsy upon the body of the deceased, which demand was refused for the given reason that the body had been buried. Complete proofs of the alleged accident were not received by the defendant until the month of March, 1931, when a statement, bearing date the 2d day of March, 1931, signed by Dr. Lewis, the other attending physician, was submitted. That statement gave the immediate cause of death, as did that issued by Dr. Holcomb, as " Intra-abdominal hemorrhage," but the contributory cause of death was thus stated: " Hemorrhage was started by either some electrical or manual massage on abdomen received in a gymnasium."

The first ground upon which the complaint was dismissed involves the merits, and that is, whether or not the plaintiff proved that the insured came to his death as the result of circumstances against which he was insured. Disregarding for the moment the admission by the plaintiff, in submitting proof of loss on the other policies, that the contributory cause of death was " Probable cancer of the intestines," plaintiff's proof goes no further than that the insured, on and prior to the 19th day of May, 1930, was taking a course in

physical culture in a gymnasium under the direction of a physical director, pursuant to instructions issued by his then medical adviser. The fair inference is that the insured had had some abdominal trouble and consulted his physician, who advised him to take gymnastic exercises. The physical culture course was, therefore, pursuant to a preconceived plan, voluntarily adopted by the insured.

Under all the authorities, if the intra-abdominal hemorrhage resulted from the exercise and treatment alone, there can be no recovery, for the reason that it did not involve a cause resulting from " accidental means," and plaintiff's proof does not go beyond the establishment of that fact. There is no proof from which the inference may be drawn that the insured met with any accident, within the meaning of the policy, while taking his exercise in the gymnasium. As to the vibrator used in the course of the treatment, and on which plaintiff attempts to predicate her case, plaintiff's proof is that its use was part of the treatment. " The motor was applied and the arms vibrated rapidly back and forward, pulling the strap with them. The force of the strap is applied violently to the abdomen." Therefore, even if it be assumed that the abdominal hemorrhage was the result of the action of the vibrator on the body of the insured, such action was not an accidental cause of a condition which resulted in the insured's death; nor is the situation changed by plaintiff's proof by expert witnesses that it was " very possible very probably that the hemorrhage was produced by some abdominal massage or injury from that vibrator." If the massage caused it, the defendant is not liable. The testimony of plaintiff's expert that " some strain, or wrench or push received during such exercise would be a competent producing cause of the rupture and the hemorrhage," is of no probative value, in the absence of proof that during the exercise the insured received a strain, wrench or push not contemplated by him. There is no such proof. The further claim that vibrators are a source of danger, supplemented by proof of the possibility of an accident by vibrators and of the manner in which an accident could happen, falls far short of establishing plaintiff's case, since such proof rests on mere speculation.

The rule of law governing these cases, as formulated in *Appel* v. *Ætna Life Ins. Co.* (86 App. Div. 83; affd., 180 N. Y. 514), has never been overruled or modified. It was there held that where the result was accidental, but the means which produced it was not accidental, there may be no recovery. That case involved the death of the plaintiff's intestate from an injury to the appendix caused by the rubbing of a muscle against it while the insured was

riding a bicycle. The action was on a policy which contained a provision similar to that involved here. The decision was that there could be no recovery, since the insured died as the result of appendicitis caused by a bicycle ride voluntarily and deliberately taken by the insured, it appearing that during the ride the insured did not sustain any fall or shock or come into collision with any other object, but that the appendicitis was due to the fact that one of the insured's muscles necessarily rubbed against the appendix and inflamed it.

*Fane* v. *Nat. Assn. of Railway Postal Clerks* (197 App. Div. 145) involved a claim for accident insurance by a railway mail clerk who, while engaged in his customary work of piling mail sacks in a car in the usual and ordinary way, suffered a rupture. It was held that he did not receive an injury within the meaning of a policy of insurance which contained practically the same provisions as we have here. The court (HUBBS, J.) in his opinion cited with approval *Hastings* v. *Travelers' Ins. Co.* (190 Fed. 258), where a dilation of the heart was caused by the exertion of the insured in raising and lowering himself repeatedly from the arms of a chair. It was there held that as the exercise was voluntary and intended there could be no recovery on an accident insurance policy. (See, also, *Niskern* v. *United Brotherhood*, 93 App. Div. 364; *Allendorf* v. *Fidelity & Casualty Co. of New York*, 223 id. 809; affd., 250 N. Y. 529, and *Barnstead* v. *Commercial Travelers' Mut. Acc. Assn.*, 204 App. Div. 473.)

As against the doctrine of these cases, the appellant relies on *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18); *McQueen* v. *Prudential Insurance Co. of America* (143 Misc. 682); *Silverstein* v. *Metropolitan Life Ins. Co.* (254 N. Y. 81) and *Schwartz* v. *Commercial Travelers Mut. Acc. Assn. of America* (Id. 523). In the *Lewis Case* (*supra*) the insured, a well, healthy man, had on his lip what appeared to be an ordinary pimple. It became larger and inflamed, and he consulted a doctor. The doctor testified that on the lip there was a punctured wound which had inflamed and infected the deep tissues. The insured died as the result of inflammation of the brain produced by a germ from the infected pimple. The court (CARDOZO, J.) in its opinion said: " We think there is testimony from which a jury might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident. We have held that infection resulting from the use of a hypodermic needle is caused by ' accidental means ' * * *. The same thing must be true of infection caused by the puncture of a pimple." Attention there is called to the proof of the plaintiff's

expert that the entrance of the germ from the skin to the deeper tissues was the result of trauma, and that trauma is almost invariably the cause of such infections. The punctured wound was a sign of trauma and was an adequate cause, at least, a jury might so find. Clearly that is not this case.

In *Bailey* v. *Interstate Casualty Co.* (8 App. Div. 127; affd., 158 N. Y. 723), cited in the opinion in the *Lewis* case, the insured, a physician, injected morphine into his leg, resulting in infection. It was claimed by the defense that the morphine caused the inflammation, while the plaintiff claimed that it was caused by a germ. In that case it was written: " The plaintiff voluntarily injected the morphine, and if that caused the injury it could hardly be accidental. Upon the evidence, however, it might have been found that the injury was in no way attributable to the morphine. If not, then the question would be whether the injury was attributable to the introduction of the needle deeper than was intended and so an irritation produced which induced the inflammation of the cellular tissue, or whether by reason of the needle or skin not being clean, something was, in the act of puncturing, transferred to the wound which induced the resulting condition." From the foregoing it is obvious that the case relied upon by the court in the *Lewis* case held nothing which sustains the appellant's contention here. In any event, both the *Bailey* case and the *Lewis* case are clearly distinguishable. They do not purport to go beyond the principle that where infection is caused by a germ entering a wound and producing an injury, the injury is caused by accidental means. That is far from holding that if a person dies from the effects of over-exertion in voluntarily taking physical exercise, it can be said he died from accidental means. It is not to be presumed that the Court of Appeals intended to overrule *Appel* v. *Ætna Life Ins. Co.* (*supra*) without calling attention to it.

*McQueen* v. *Prudential Insurance Co. of America* (*supra*) is an Appellate Term case, First Department. There the insured, while engaged in a friendly boxing bout while undertaking physical training in a gymnasium, was struck on the nose and a rupture of a blood vessel ensued and later general septicemia developed, from which he died. In the opinion *per curiam* it was recognized that the insured's participation in the boxing bout was intentional, but it was held that a question of fact was presented as to whether the injury was one ordinarily to be expected from or attendant upon indulgence in such exercise and, in any event, whether " the dire result which followed was so out of proportion to its trivial cause that whether it was due to accidental means was for the jury," on

the authority of the *Lewis* case. While the facts in that case are obviously different, I shall make no further attempt to distinguish it for the reason that, if the decision was controlled by the *Lewis* case, it is inapplicable.

In *Silverstein* v. *Metropolitan Life Ins. Co. (supra)* the insured met with an accident. While lifting a milk can into an ice box he slipped and fell, the can striking him on the abdomen and injuring him. The defense was that at the time of the accident there was on the abdomen of the insured a small ulcer which had weakened the wall at the point where the milk can struck him, with the result that the impact of the blow was followed by perforation, permitting the contents of the stomach to escape into the peritoneum, resulting in death from peritonitis. The case is not controlling here, for the reason that it did not go beyond holding that evidence that the ulcer was dormant and that were it not for the blow it would have had no effect upon the health of the insured sustained a finding that it was not a disease or an infirmity within the meaning of the policy. Proof of the blow was in the case.

*Schwartz* v. *Commercial Travelers Mut. Acc. Assn. of America (supra)* involved almost identically the *Lewis* case. A hemorrhage of the nose occurred when the insured removed a fragmentary scar tissue from his nose. The defense was that the hemorrhage was caused from an ulcer and was not the result of an accident. The case originated in the Trial Term, New York county, and was decided on the authority of the *Lewis Case* (132 Misc. 200, p. 204).

The complaint, therefore, was properly dismissed on the first ground, since the insured died from the effect of voluntary physical exercise or from voluntary medical treatment. This decision I reach regardless of the admissions of the plaintiff, in her proofs of loss under the other policies, that the direct cause of death was intra-abdominal hemorrhage and the contributing cause was cancer. Plaintiff may not in any event base a recovery on Dr. Lewis' testimony that the " Hemorrhage was started by either some electrical or manual massage on abdomen received in a gymnasium." Assuming that to be true, it was not an accidental cause of death.

The second ground on which the complaint was dismissed was that written notice of injury was not given to the company within twenty days after the date of the accident causing such injury within the provision of the policy. The insured died within the twenty-day period, and the letter on behalf of the plaintiff, claiming that the insured's death was accidental, was received by the defendant on the 13th day of June, 1930, beyond the twenty-day

period, but within six days of death, which notice plaintiff contends was immediate notice within the meaning of the policy, and in support of that contention invokes but one authority (*Western Commercial Travelers' Assn.* v. *Smith,* 85 Fed. 401). In the absence of authority to the contrary, and respondent calls our attention to none, I accept the reasoning of that case. The policy there provided for immediate notice in the event of any accident for which claim should be made or in case of death resulting therefrom. In other words, immediate notice was required in either case. It was there held that the insurer, by the policy, intended to provide two different classes of notices for the two classes of claims, one, an immediate notice of the accident which does not result in death, and the other an immediate notice of death which resulted from such an accident, to be given by the beneficiary as soon as it occurs. Applying that rule here, a question of fact was presented as to whether six days was a reasonable notice within the meaning of the policy, since " immediate notice " means reasonable notice. (*Greenwich Bank* v. *Hartford Fire Ins. Co.,* 250 N. Y. 116; *Matthews* v. *American Central Ins. Co.,* 154 id. 449; *Trippe* v. *P. F. Society,* 140 id. 23.)

The third ground upon which the complaint was dismissed was that the plaintiff failed to comply with the condition precedent involved in the standard provisions, in that she refused to allow the defendant to make an autopsy on the body of the deceased " Because I thought my husband was in his grave and he should stay there." Since no notice of the accident was given either by the insured during his lifetime or by the plaintiff before burial of the remains, the demand for an autopsy was reasonable, and compliance with it was a condition precedent. (See *Sheehan* v. *Commercial Travelers, etc., Assn.,* 283 Mass. 543; *Wehle* v. *U. S. Mut. Accident Assn.,* 153 N. Y. 116, at p. 122, and *Standard Acc. Ins. Co.* v. *Rossi,* 35 F. [2d] 667, 670.) The authorities invoked by the appellant (*Ewing* v. *Commercial Travelers' Accident Assn.,* 55 App. Div. 241; affd., 170 N. Y. 590; *Root* v. *London Guarantee & Accident Co.,* 92 App. Div. 578; affd., 180 N. Y. 527) establish the rule that if the insurer had knowledge of the death under circumstances which gave it notice that a claim would be made, delay in demanding the autopsy until after the burial is unreasonable. That rule, however, does not apply to this case. While it is true the defendant knew of the death, the affirmative proof filed with it before the burial was to the effect, indirectly, that no claim of accident was to be made, since the insured died of a hemorrhage superinduced by cancer. The delay after burial, from the thirteenth of June to the eleventh of July, was immaterial. The point of the cases is that

it is the delay beyond the period of burial that makes it unreasonable. My opinion is that the dismissal on the third ground was proper.

The judgment should be affirmed, with costs.

LAZANSKY, P. J., DAVIS and JOHNSTON, JJ., concur; TOMPKINS, J., dissents and votes for reversal and a new trial upon the ground that the questions, (1) whether the death was accidental, and (2) whether there was a waiver of defendant's right to an autopsy by unreasonable delay in asking for it, should have been submitted to the jury. The twenty days' provision applies only where a claim is made for an injury, as distinguished from a death claim. In the latter, " immediate " notice of death must be given. Whether notice given five days after death was reasonable, was a question for the jury.

Judgment affirmed, with costs.