THELMA J. COHEN, Plaintiff, *v.* GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.

Supreme Court, Special Term, Kings County, February 17, 1955.

*Daniel J. Reidy* for defendant.

*Leon Wasserman* for plaintiff.

ARKWRIGHT, J. This application by the defendant insurance company for summary judgment is made in an action brought by a plaintiff beneficiary to recover under the double indemnity provision of a life insurance policy issued to her deceased husband, such double indemnity being payable in the event of accidental death.

The insured died on January 24, 1952.

Defendant insurance company received its first notification thereof in a letter from plaintiff's attorney, dated March 14, 1952. Enclosed therewith was a copy of the death certificate. Demand was made therein for payment of the policy proceeds, but no mention was made of any claim based on accidental death. The death certificate contained the sworn statement of the attending physician " that death was not caused, directly or indirectly, by accident, homicide, suicide, acute or chronic poisoning, or in any suspicious or unusual manner and that it was due to *natural causes* [sic]."

On March 25, 1952, defendant received from the said attorney " proofs of death " on behalf of plaintiff as beneficiary under the policy, which it had requested. Item 3 (b) thereof, which called for information as to " cause of death," and item 5, which called for information as " disease or condition " were not answered.

On April 9, 1952, defendant sent to the attorney its check for $10,042 made payable to the plaintiff as beneficiary, with a letter stating that the claim had been approved and that such payment

was made " in full payment of the policy proceeds." Plaintiff accepted and cashed the check.

Defendant heard nothing further until July 1, 1952, when it received from the same attorney, a letter dated June 30, 1952, stating that " In proof of the accidental death of the insured under the above captioned policy, I enclose herewith letter of Dr. Ben Albert Borkow dated April 30, 1952, and photostatic copy of letter of Dr. Edmund R. Marino dated June 24, 1952. All prior proofs are amended and supplemented to conform to the proofs herein submitted in proof of the accidental death of the insured." This letter was the first intimation which defendant had of the claim that the provision of the policy calling for payment of double indemnity in the case of accidental death was sought to be invoked.

The only basis of the application, therefore, is set forth in copies of the letters of the two physicians. Dr. Borkow was the deceased's attending physician and the one who signed the death certificate as above. He was in such attendance from January 18, 1952, until January 24, 1952, when the patient died. In his letter of April 30, 1952, Dr. Borkow said, in part: " I first saw Mr. Cohen in the afternoon of January 18, 1952, at his home. His chief complaint was severe coughing accompanied by extreme nervousness. He gave me a history of having been thrown around in a plane which was struck by lightning. He complained that he hurt his abdomen against the seat in front and by falling luggage. The accident occurred the previous day." The letter concludes with the writer's diagnosis of the medical cause of death as " messenteric thrombosis."

Dr. Marino's letter, dated June 24, 1952, shows that his opinion was sought as a pathological expert. Basing such opinion on the facts disclosed, and medical findings made, by Dr. Borkow and the latter's diagnosis that death was due to " messenteric thrombosis," Dr. Marino concluded: " I have studied the history of the injury to Mr. Cohen and it appears, in my opinion, that causal relationship exists between his accident and his eventual death. I cannot comment, at this time, concerning the exact cause of death."

Faced with the delayed claim for double indemnity defendant on July 10, 1952, sought permission to exhume the body of the deceased insured under a policy provision giving it a " right of autopsy." Such provision, so entitled, provides that " The Company shall have the right and opportunity to examine the body and to make an autopsy unless prohibited by law."

With such demand plaintiff unequivocally declined to comply, taking the position that the demanded autopsy at this time would require also an exhumation and that there is no policy clause giving that right. Plaintiff makes the further point that because the body was embalmed and the blood was withdrawn therefrom in the process such autopsy would be nonrevealing as to the claimed accidental cause of death.

Similar situations have been before the courts and they have held that the contract provision made by the insured during his lifetime permitting the insurance company the right to examine the body and make an autopsy in the event of a claim based on accidental death is a condition precedent to the recovery under the double indemnity clause.

In *Titus* v. *Travelers Ins. Co.* (268 App. Div. 802), a decision in this Department, the claimed accident occurred on January 25, 1943, and the insured's death on February 10, 1943. The insurance company was not notified thereof until June 7 or June 14, 1943. On July 2, 1943, the company invoked the policy provision giving it the right to have an autopsy, which the plaintiff beneficiary refused. In an action subsequently brought against it, the defendant insurance company moved, as here, for summary judgment, which motion was denied at Special Term. The Appellate Division unanimously reversed such denial, holding that " The failure of plaintiff to comply with the condition precedent, in that she refused to allow the autopsy, bars any recovery under the policy (*Dvorkin* v. *Commercial Travelers Mut. Accident Assn.*, 258 App. Div. 501, affd. 283 N. Y. 629; *Gould* v. *Travelers Insurance Co.*, 244 App. Div. 274, affd. 270 N. Y. 584)."

In the *Dvorkin* case, the accident occurred on February 4, 1938, and notice to the insurance company was given on February 16, 1938, " some time after the burial of the assured." (258 App. Div. 502.) The company demanded the right to have an autopsy, which was refused. In that case, both appellate courts ruled that the trial court erred in submitting to a jury the reasonableness of the demand under the circumstances. The jury rendered its verdict in favor of the plaintiff. Such verdict was reversed on appeal and the complaint dismissed, the Appellate Division of the First Department pointing out (p. 504) " that an autopsy might have revealed a condition, difficult or perhaps impossible of satisfactory proof by other means, which would have influenced the jury to arrive at a different result." It was held that plaintiff's refusal to comply with defendant's demand " prevents the enforcement of the policy " (p. 503).

In the *Gould* case the accident happened on May 19, 1930, insured died on June 7, 1930, and was buried on June 10, 1930. On June 9, 1930, claim was made on the insurance company under its policies, along with medical proof that the insured's death was due to natural causes. On June 12, 1930, a letter was addressed to the company wherein it stated that the insured died " ' as the result of an accident.' " (244 App. Div. 276.) On July 11, 1930, the company demanded an autopsy which plaintiff beneficiary refused " for the given reason that the body had been buried " (p. 276, Appellate Division decision). The action subsequently brought by her went to trial but the complaint was dismissed at the close of the plaintiff's case for the reason, among others, that plaintiff had refused the company the right of autopsy. On this phase of the case the Appellate Division of this Department said (p. 281): " The third ground upon which the complaint was dismissed was that the plaintiff failed to comply with the condition precedent involved in the standard provisions, in that she refused to allow the defendant to make an autopsy on the body of the deceased ' Because I thought my husband was in his grave and he should stay there.' Since no notice of the accident was given either by the insured during his lifetime or by the plaintiff before burial of the remains, the demand for an autopsy was reasonable, and compliance with it was a condition precedent. (See *Sheehan* v. *Commercial Travelers, etc., Assn.*, 283 Mass. 543; *Wehle* v. *U. S. Mut. Accident Assn.*, 153 N. Y. 116, at p. 122, and *Standard Acc. Ins. Co.* v. *Rossi*, 35 F. [2d] 667, 670.) The authorities invoked by the appellant (*Ewing* v. *Commercial Travelers' Accident Assn.*, 55 App. Div. 241, affd. 170 N. Y. 590; *Root* v. *London Guarantee & Accident Co.*, 92 App. Div. 578, affd. 180 N. Y. 527) establish the rule that if the insurer had knowledge of the death under circumstances which gave it notice that a claim would be made, delay in demanding the autopsy until after the burial is unreasonable. That rule, however, does not apply to this case. While it is true the defendant knew of the death, the affirmative proof filed with it before the burial was to the effect, indirectly, that no claim of accident was to be made, since the insured died of a hemorrhage superinduced by cancer."

The foregoing cases effectively dispose of the point made by plaintiff herein that the contract right " to examine the body and to make an autopsy unless prohibited by law " does not include the right to exhume the body for such purpose after burial. In all of the above cases, it will be noted, the demand for autopsy necessarily involved an exhumation of the body.

Plaintiff attempts to distinguish the *Gould* (244 App. Div. 274, affd. 270 N. Y. 584, *supra*) and *Dvorkin* (258 App. Div. 501, affd. 283 N. Y. 629, *supra*) cases, arguing that in both it was made apparent that an autopsy was indispensable to determine the cause of death. Answer to this is found in the hereinabove quoted extract from the opinion of the Appellate Division in the *Dvorkin* case (*supra*, p. 504).

Plaintiff offers certain cases in support of her right to refuse to accede to the defendant's invocation of the policy provision for an autopsy.

That of *Ewing* v. *Commercial Travelers Mut. Accident Assn.* (55 App. Div. 241, affd. 170 N. Y. 590) was specifically considered and disposed of by the Appellate Division in the *Gould* case (*supra*), as noted in the above-quoted excerpt from the opinion therein.

Plaintiff cites also *Wehle* v. *United States Mut. Accident Assn.* (153 N. Y. 116) and *Root* v. *London Guarantee & Accident Co.* (92 App. Div. 578, affd. 180 N. Y. 527). Both cases are distinguishable since in both an opportunity was afforded the insurance companies to examine the bodies of the respective deceaseds before interment. Failure on their part to do so and to then demand exhumation, it was held, was unreasonable.

In view of the foregoing, it becomes unnecessary to pass upon defendant's additional argument, in support of the motion, that the proof submitted to it by plaintiff in support of the claim that death was due to accidental causes was insufficient, although there is weight to such argument, plaintiff having submitted only the hearsay statement contained in Dr. Borkow's letter above quoted, and Dr. Marino's conclusory opinion based thereon as to causal connection. It would seem that it would have been possible for plaintiff to have established through the records of the airplane company or by statements from other passengers on the flight that there was at least an accidental occurrence such as that to which the insured made reference, according to Dr. Borkow.

Other points made by plaintiff, such as " waiver " of its right by the insurance company, are without weight.

Defendant's motion for summary judgment is granted.